## No. 11,768.

### W. B. TORIAN, PRESIDENT OF THE POLICE JURY, ET AL., VS. NUMA SHAYOT.

#### ON MOTION TO DISMISS.

Where suit is brought against a party for payment of a license imposed by an ordinance of the police jury of a parish, and defendant defends on the ground that the police jury has no jurisdiction for purposes of taxation over the locality in which he lives, and is estopped from exercising authority therein, the issue between the parties is one involving the legality of the tax, and falls within the appellate jurisdiction of the Supreme Court.

#### ON THE MERITS.

Act No. 110 of 1880 " prescribing the manner of altering, changing or amending the charters of cities and towns in the State of Louisiana, the city of New Orleans excepted," went only to the extent of providing that such cities might lay aside their existing systems of municipal regulation and control, and assume others, not inconsistent with the Constitution and laws of the State, which were more in accordance with their ideas of propriety and convenience. It had no relation to the subject of boundaries or territory. It contained no reference to the relations between their inhabitants and the State or parish, and conferred no power, express or implied, to alter or destroy those relations.

When a political corporation is vested with public powers and charged with public duties, in a given locality, it can not be permanently superseded in the exercise of those powers, and the performance of those duties, by having for a time acquiesced in and recognized as legal the exercise of its own powers and authority in the territory by another corporation, when the power and authority exercised were, in reality, without law to support it. Political powers and duties can not be thus transferred, acquired and discharged.

APPEAL from the Seventeenth Judicial District Court, Parish of Lafayette. *Allen, J.*

Plaintiffs allege that under the laws and Constitution of the State, the power of taxation has been delegated to the parish, and through

590 SUPREME COURT OF LOUISIANA.

President of Police Jury et al. vs. Shayot.

its police jury it has levied, according to law, a graduated license tax, on occupations and business enterprises, for the year 1893. That the defendant has been engaged since January 1, 1893, in the business of keeping a barroom or coffee house, where alcoholic and malt liquors, to be drunk on the premises, are sold, and that he is also engaged in selling groceries and other merchandise at retail; that for each of said occupations he owes a license tax under the ordinances of the police jury, legally passed and published—one hundred dollars on the barroom, and ten dollars on the grocery and merchandise business. That defendant's business is carried on within and under the territorial jurisdiction of the parish, as fixed by law, and outside the limits of the corporation of Vermilionville (now known as Lafayette), as fixed by *Act No. 111* of 1869; that the defendant is delinquent and refuses to pay.

Defendant answered that said town is regularly incorporated under act approved March 11, 1836, Act No. 111 of 1869, Act No. 7 of 1878, regular session, and *under the influence* of Act No. 110 of 1880; that the police jury has no jurisdiction over said town except, (1) over the court house and jail; (2) to impose and collect the taxes to repair or build a court house and jail; (3) to impose and collect the tax for criminal expenses, as provided by Act No. 92 of 1878, regular session. That the attempt to collect a parish license from him, at this time, is illegal and in contravention of his constitutional rights, divesting vested rights, and impairing the obligation of contracts, in violation of Article 155 of the Constitution; that he bought property in said town and went into business, knowing that the police jury was without jurisdiction therein, except as above mentioned; that he never would have acquired property and gone into business in said town if the police jury's jurisdiction and control had existed thereon for all purposes, and to thereby subject himself and property and business to double and treble burdens of taxation, and to dual jurisdiction; and further, he specially pleaded that the police jury have recognized the territorial limits of the town of Lafayette as they now exist, and are estopped from denying that the entire charter of said town is in full force and effect throughout the territorial jurisdiction of said town. That there is no law in existence authorizing the levy and collection of such license taxes as are herein sought to be collected, and that the action of the plaintiff in attempting to collect such license tax is illegal, vexatious, unconstitutional and op-

pressive, and in direct violation of law. Furthermore, that the State of Louisiana has recognized the territorial limits of the town of Lafayette as they now exist.

The District Court rendered a judgment rejecting plaintiffs' demand, and they appealed.

Defendant moved in this court to dismiss the appeal on the ground that "this court is without jurisdiction *ratione materiæ*, the sum demanded being one hundred and ten dollars for a license, and the legality or unconstitutionality of the levy of any license tax is not called in question, nor does the judgment appealed from, which rejects the plaintiffs' demand, adjudge any tax, toll, or impost to be legal or illegal."

---

*M. T. Gordy*, District Attorney, and *O. C. & Julian Mouton* for plaintiffs and appellants:

I.

By act approved January 17, 1823, the Legislature created the parish of Lafayette, and invested it in said act and by subsequent legislation with the power of property and license taxation. R. S. of 1870, Sec. 2743, No. 8; Const. of 1879, Art. 209; Laycock vs. City of Baton Rouge, 36 An. 328; Favrot vs. Baton Rouge, 38 An. 230; Const. of 1879, Art. 206; Act 150 of 1890, Sec. 14; 46 An. 449, Mayor vs. White.

The power of taxation so delegated to the parish necessarily extended to every thing and every person through its territorial limits. Am. and Eng. Ency. of Law, Vol. 25, p. 18.

Under the general laws of the State, the police juries of the parishes are vested with power to tax property and persons within the limits of incorporated towns, unless such power is withheld or withdrawn by express legislative provision. Benfield vs. Hines, 13 An. 420; Maurin vs. Smith, 25 An. 445; Iberia vs. Chiapella, 30 An. 1143.

The power to determine in the first place the boundaries of a municipality, and subsequently to alter them, resides, in the absence of constitutional restrictions, in the body possessed of the power of incorporation—the Legislature. Its supreme control includes the power to prescribe and enlarge or restrict, from time to time, the territorial limits of municipal corporations. Am. and Eng. Ency. of Law, Vol. 25, pp. 1001, 1002; 27 An. 156; 28 An. 850.

Incorporated towns can not change their boundaries or annex contiguous territory without being expressly authorized to do so by general statute. Const. of 1879, Art. 46; Am. and Eng. Ency. of Law, Vol. 15, p. 1019; Commissioners Co. vs. Carter, 2 Kan. 115; Atchison, etc., R. Co. vs. Maguilkin, 12 Kan. 301; Am. and Eng. Ency. of Law, Vol. 15, p. 1020, foot note 3; *Id.*, pp. 1001, 1002; 1 Swan (Tenn.), 164; 3 Head (Tenn.), 318; 38 An. 271; 45 An. 34.

In this State the powers of parishes and municipalities are merely administrative, except where express authority has been given by law. 3 An. 294.

Annexation proceedings without statutory authority are absolutely null for want of jurisdiction or power, and can not even be validated by subsequent statute for purposes of taxation. 2 Kan. 115; 12 Kan. 301; Am. and Eng. Ency. of Law, Vol. 15, p. 1020, foot note 3.

Even where a statute authorizes the annexation, it is essential that all the proceedings should be in strict conformity with the statute. Am. and Eng. Ency. of Law, Vol. 15, p. 1019; Pensacola vs. Louisville, etc., R. Co., 21 Fla. 492; 100 Ind. 443; 99 Ind. 117; 8 Am. and Eng. Corp. Cases, pp. 512, 636.

Municipal corporations, where no power is conferred for that purpose, can not enlarge the statutes of the State; and an ordinance inconsistent and in conflict with the general policy of the State is illegal, null and void. 45 An. 34.

The power to levy taxes is to be liberally construed, while exemption from taxation must be strictly construed. *Id.*, 603.

Every presumption will be made against the exemption, and nothing can be supplied by intendment or inference. 35 An. 668; 18 Wall. R. 206; 97 U. S. S. R. 666.

Exemption laws are strictly construed, and the principle applies not to general laws only, but also to special enactments, such as charters of corporations of any class. 34 An. 954; Saunders on Taxation, p. 44.

The party claiming the exemption must show that his case falls clearly within the exception to the general law. Am. and Eng. Ency. of Law, Vol. 25, p. 159.

Proceedings by an incorporated town under provisions of Act 110 of 1880 for the purpose of exempting persons and property within its territorial limits from parochial taxation, or for the annexation of contiguous territory and its exemption from such taxation, are *ultra vires*, null and void. That statute does not give to corporations the power, either express or implied, to annex, and still less to declare same and its inhabitants exempt from the power of taxation previously delegated to the parish. 38 An. 261; Act 105 of 1892.

Acts of municipal corporations beyond the powers expressly granted are *ultra vires*, absolutely null and void, and no direct proceedings are necessary to set them aside. Am. and Eng. Ency. of Law, Vol. 15, p. 1100; 45 An. 392; 35 N. J. 381; 29 N. J. 104, 475; 100 Ind. 443; 8 Am. and Eng. Corp. Cases, 636; 2 Kan. 115; 12 Kan. 301: 1 Swan (Tenn.), 164; 3 Head (Tenn.) 318; 45 An. 34; 38 An. 261.

Should it be held that the annexation proceedings can not be attacked collaterally, this would not necessarily operate a withdrawal of parochial taxation over the additions and their inhabitants. The *de facto* town government might remain and the exemption be denied. 13 An. 420; 25 An. 445; 30 An. 1143; 42 An. 406; 38 An. 261.

## II.

Defendant's case does not fall within the constitutional prohibition of divesting vested rights or impairing the obligation of contracts. 35 An. 548; 28 An. 497; 14 L. 395, 406; 12 An. 515; 27 An. 156; 1 An. 162; 32 An. 736, 440; 41 An. 156; 33 An. 981; 42 An. 605; 5 An. 661; 11 An. 54; 31 An. 292; 38 An. 119.

Powers delegated to parishes and municipalities for local objects are regarded as trusts confided in the hands in which they are placed, and are not subject to be delegated by the repositories of them. Am. and Eng. Ency. of Law, Vol. 15, pp. 1042, 1043.

The parishes can not surrender such powers by contract, nor bind themselves not to exercise them whenever it may become necessary; and those dealing with them are charged with notice of the powers they possess. Am. and Eng. Ency. of Law, Vol. 15, pp. 1045, 1046; 28 An. 497.

38

The whole community is interested in retaining the power of taxation undiminished, and has a right to insist that its abandonment shall not be presumed in any case where the deliberate purpose of the State to abandon it does not appear. Morgan vs. Louisiana, 93 U. S. 222; Vicksburg R. R. Co. vs. Dennis, 116 U. S. 667.

Such inferior political organization as parishes and municipalities have not the inherent power of conferring exemptions. Am. and Eng. Ency. of Law, Vol. 25, p. 157; 35 An. 548; 28 An. 497; 42 An. 605.

The Legislature can not constitutionally transfer to municipal corporations the power to determine upon what property taxes shall or shall not be imposed. Am. and Eng. Ency. of Law, Vol. 25, p. 607, foot note 2.

The power delegated to the parishes to tax all the property within their territorial jurisdiction must be exercised by them in obedience to the requirement of equality and uniformity in taxation expressed in the Constitution; and in matters of license taxation, all of a class to be taxed alike. Const., Art. 203; Saunders on Taxation, p. 24; Am. and Eng. Ency. of Law, Vol. 25, pp. 606, 607; 31 An. 637; 37 An. 104.

The acts of a police jury beyond its lawful powers are *ultra vires*, and it is not estopped from setting up that plea, or its want of power under its constituent statute, to do a given act in excess of its corporate power and authority. Am. and Eng. Ency. of Law, Vol. 15, p. 1100; 45 An. 392; 35 An. 548; 28 An. 497; 42 An. 605.

The power to change, alter, restrict or enlarge the boundaries of municipal corporations is lodged in the Legislature, and the corporate authorities can in no case change the boundaries without the consent of the government. When so authorized it must be exercised in the manner prescribed, and by the officers designated in the statute. Am. and Eng. Ency. of Law, Vol. 15, pp. 1001, 1002; Norris vs. Mayor, etc., of Smithville, 1 Swan (Tenn.) 164; McCallie vs. Mayor of Chattanooga, 3 Head (Tenn.) 318; 100 Ind. 443; 8 Am. and Eng. Corp. Cases, 512, 636; 99 Ind. 117.

An individual can not be estopped from contesting the validity of annexation proceedings when there is a want of jurisdiction in

the council to make the order; nor is a police jury, by recognizing such proceedings, estopped from contesting their validity when there is a want of jurisdiction or power in itself or in the council. Strosser vs. Fort Wayne, 100 Ind. 443; 8 Am. and Eng. Corp. Cases, 636; 45 An. 392; 2 Kan. 115; 12 Kan. 301.

When a police jury adopts an ordinance upon the report of a joint committee from itself and a town council, by which it proposes to recognize annexation proceedings inaugurated by the town, and declare that the inhabitants of the annexed territory do not owe their licenses to the parish as they did previously, or any other acts by which these are recognized, is an attempt on the part of said police jury to exempt such parties and their property from taxation, or a relinquishment of the taxing power, or a partial surrender and renunciation of political powers vested in it by the Constitution and laws. Such an ordinance or other acts of similar import are absolute nullities, of which all persons must take notice, create no estoppel against the parish, and no repeal thereof is necessary before suit is instituted for the collection of the parish taxes. 3d Municipality of New Orleans vs. The Ursuline Nuns, 2 An. 611; City of New Orleans vs. St. Charles R. R. Co., 28 An. 497.

*Conrad De Baillon, Wm. Campbell* and *C. D. Caffery*, Attorneys for Defendant and Appellee:

A charter may be amended, and the name of the place and the governing body may be changed, and its boundaries altered, while in law the corporation remains the same. This can be done by a general law operating upon the whole State, or, in the absence of constitutional restriction, by a special act. 1 Dillon on Mun. Corp., Sec. 52.

The General Assembly of Louisiana was authorized to enact a general law, such as Act 110 of 1880, operating upon the whole State except New Orleans. Dillon on Mun. Corp., Sec. 126.

Act 110 of 1880 authorizes towns to amend, alter and change their charters; and includes the extension of the territorial limits.

Acts of 1836, pp. 126 to 129, incorporating the town of Vermilionville, in the parish of Lafayette, exempts the persons and prop-

erty within its limits from ·parish taxation and licenses.  This exemption operates on the extensions to said town.  1 Dillon on Mun. Corp., Sec. 52.

There can not be, at the same time, within the same territory, two distinct municipal corporations exercising the same powers, jurisdiction and privileges.  *Id.*, Sec. 125.

The police jury, having recognized these extensions under Act 110 of 1880, are now estopped from contesting or questioning the action of the City Council in 1884.  Cooley Const. Lim., page 312, note 2; 15 Am. and Eng. Ency. of Law, 965, note " Acquiescence by State," also note 2.

The corporate character of a municipal corporation can not be questioned collaterally.  Cooley Const. Lim., p. 312, note 2; 15 Am. ·and Eng. Ency. of Law, pp. 964, 965 and notes.

No one can stand in judgment for the police jury unless specially authorized.  38 An. 630, Police Jury vs. Mayor; 38 An. 704, Police Jury vs. Wise.

The town of Lafayette is not a party to this suit, and yet its municipal autonomy is sought to be destroyed by a collateral attack.

The town of Vermilionville was incorporated in 1836.  Acts of 1836, pp. 126 to 129.

Section 13 of that act exempts the town from parish taxation and licenses.

The charter was amended in 1869, and its territorial limits were extended.  Act No. 111 of 1869, pp. 142, 144.

The powers of the City Council were enlarged in 1878, by Act No. 79 of the regular session, pages 129 and 130.

In 1880 the General Assembly passed Act No. 110, entitled " An act prescribing the manner of altering, changing or amending charters of cities and towns in the State of Louisiana (the city of New Orleans excepted)."

The owners of the Mouton, Mills and McComb additions had said additions surveyed, divided into town lots, and had plans made, deposited and filed in the recorder's office as additions to the town of Vermilionville.

In 1884, acting under the provisions of Act No. 110 of 1880, a majority of the property tax-payers signed a petition asking the City Council to have the charter amended in. certain particulars;

among others, to change the name of the town from Vermilion-
ville to Lafayette, and to extend the territorial limits of the
town.

The City Council acted on this petition, and reported amendments.

Commissioners for said election were appointed, and the result of
the election proclaimed.

The City Council then proceeded to improve those additions by drain-
ing them, grading streets, making sidewalks, building plank
pavements, lighting the streets and thoroughly policing those
additions.

On October 4, 1884, the police jury appointed a committee of one
(C. D. Caffery, Esq.) to confer with a like committee of one
(Wm. Campbell, Esq.) appointed by the City Council of the town
of Lafayette, in regard to the collection of licenses for the year
1884 in the new incorporated limits of the town of Lafayette.

These committees conferred and reported the result of their confer-
ence to the police jury.   They reported that said licenses were
due to the town of Lafayette; and the police jury accepted and
adopted the report.

Since which time the police jury has never exercised any jurisdiction
over the territorial limits of the town of Lafayette as established
by the election held under Act 110 of 1880.

The only jurisdiction exercised by the police jury was to have col-
lected the tax for criminal expenses, authorized by Act No. 92
of 1878, regular session, which taxes the police jury has annually
levied and collected.

The police jury levied and collected the three mills criminal tax for
the years 1884, 1885, 1886, 1887, 1888, 1889, 1890, 1891, 1892, on
the property situated in the town of Lafayette, including the
property in the Mills, Mouton and McComb additions.

The police jury required the town of Lafayette to pay the costs of
inquests in those additions; and in one case, where the police
jury had paid the costs of an inquest, the police jury required
the City Council of the town of Lafayette to refund the amount
thus paid by the police jury, which was done.

The police jury yearly recognized the territorial limits of the town of
Lafayette; they conferred with the committees appointed by the
council for drainage, establishment of potters' field; purchased
with said town a plot of ground fo  a potter's field.

Defendant testifies that he owns property in the McComb addition. That he would not have gone into business if he had known that the parish had jurisdiction over that territory.

### ON MOTION TO DISMISS.

The opinion of the court was delivered by

NICHOLLS, C. J. The plaintiff, claiming jurisdiction over the locality in Lafayette parish, in which defendant lived, for purposes of taxation, passed an ordinance levying licenses for the year in 1893, the parish, specifically naming besides the locality in question, and directing the tax collector to collect the same, and in case of refusal to pay, instructing him to institute suit for that purpose. The tax collector having instituted suit against defendant for a license, was met by the defence that the parish of Lafayette was without jurisdiction over the locality, and without power or authority to impose the license, and that it was estopped from so doing. The issue between the parties was one directly involving the legality of the tax, and the Supreme Court has jurisdiction over that issue. The motion to dismiss is overruled.

### ON THE MERITS.

The town of Vermilionville, in the parish of Lafayette, was incorporated by act of the Legislature in 1836.

The thirteenth section of the act provides that " the police jury of the parish of Lafayette shall no longer have or exercise any jurisdiction within the aforesaid limits (the limits of the town as fixed by the act), except it be over the court house, jail and other property belonging to the parish; provided, that whenever it shall be necessary to levy a tax for the purpose of building or repairing the court house or jail of said parish the property within said town shall be equally taxed with the property of the parish."

The charter of the town was amended subsequently by Act No. 111 of 1869 and Act No. 79 of 1878, but neither of these acts by their provisions, affected the thirteenth section of the original act above quoted.

They simply enlarged the powers of the corporation, and extended its territorial limits. The new Constitution of Louisiana went into effect on the 1st of January, 1880.

In the year 1880 the Legislature passed *Act No. 110*, "prescribing the manner of altering, changing or amending the charters of cities and towns in the State of Louisiana, the city of New Orleans excepted," and in 1882 it enacted Act No. 49, "To prescribe the manner in which cities and towns may obtain charters or acts of incorporation."

*In 1892* another act was passed, known as *Act No. 105*, entitled "An act prescribing the manner in which cities and towns in this State, the city of New Orleans excepted, may extend their territorial limits so as to annex thereto and include therein lots of lands, contiguous and adjacent to such cities or towns."

In March of 1884 certain proceedings took place, having in view amendments to the charter of the town of Vermilionville, and the extension of its territorial limits, so as to include the Mills, Mouton and McComb additions. The proposed extension of the limits seems to have been based upon a petition of the persons living upon the lands sought to be brought within the corporation and the proposed amendments upon the petition of tax-payers of the town.

At a session held in March, 1884, the City Council of Vermilionville appointed a committee to take these matters into consideration and to draft amendments. The committee made a report, submitting amendments, among them one extending the limits so as to include the above mentioned additions, and changing the name of the town to Lafayette.

On March 29, 1884, the mayor issued his proclamation calling for an election by the citizens of the town to pass upon the adoption or rejection of the amendments and fixing May 5, 1884, as the date therefor.

On May 7, 1884, the mayor issued his proclamation announcing the adoption of all the amendments submitted at the election.

From that time the Mills, Mouton and McComb additions have been treated and dealt with by the City Council as forming in every respect a part of the town, now known as the town of Lafayette, grading the streets, draining and lighting them, making sidewalks, building plank pavements and exercising police powers over them. They have also had representation in the Town Council and they have borne their share of town taxation.

In October, 1884, the police jury of Lafayette appointed a committee to confer with a like committee from the Town Council, in

regard to the collection of licenses for the year 1884 in the newly incorporated limits of the town.   In November the committee made a report which was adopted by the police jury to the effect "that in the matter of the licenses alleged to be due the parish of Lafayette by persons late of the parish and now of the corporation of Lafayette it reported the said licenses are due the corporation."

No parochial taxes were levied or collected on the property in the annexed territory from 1884 to 1892, except the three mills criminal tax (for which the towns-people were liable under the provisions of Act No. 79 of 1878), none of it being included in the assessment for the years 1887, 1888, 1889, 1890, 1891 and 1892, and the police jury, sitting as a board of reviewers for those years, approved the assessment rolls (with that property omitted) as the proper basis for parochial taxation.   No one in the annexed portion has paid parish licenses since 1884.

The police jury in 1890, 1891 and 1892 instructed the tax collector to collect licenses in these additions, but no steps seem to have been taken in that direction until the institution of the present suit.

The police jury at various times, and in different ways, recognized the legality of the annexation to the town, and the results claimed as legally flowing from it, and these acts are invoked by way of estoppel by the defendant in bar of any attack by the plaintiffs upon the same.   No complaint seems to have been made by any parties, either in the old or in the extended limits.

It is not alleged in the petition that the parish is indebted, and that the withdrawal of the right and power of taxation over the persons and property, within the limits of the town extension, would throw unjust and improper burdens upon the balance of the parish for debts created prior to the annexation; but the police jury plants itself squarely upon the ground that under the act of 1823, incorporating the parish of Lafayette, and the acts of the General Assembly relative to the powers of municipal corporations, it was clothed with power to levy and collect taxes throughout the parish, and that that power has not been withdrawn over that portion of the parish included within the limits added to the town.   That the annexation was authorized and warranted by no law in existence at the time; the action of the Town Council was *ultra vires*, and the whole proceeding absolutely null and void, and of no effect.   That therefore its own powers remained unimpaired.   That being vested with pub-

lic powers and charged with public duties it was powerless to yield its powers, or abandon its duties, even if it were so disposed, and no act, either of active affirmance or simple acquiescence, could be invoked as an estoppel.

Plaintiffs do not contest the power of the Legislature to have exempted, as it did, the town of Vermilionville from parish taxation in the original act of incorporation, nor do they contend that when, by *legislative act,* the territorial limits were extended, the exemption was not broadened to extend over and cover the extended limits.

What they deny is that the limits *have been* legally extended, and, *even if legally extended,* that exemption from parish taxation could flow from the *action of the Common Council* or a *vote of the people.* They maintain that such exemption could result only from direct legislative action.

At the time of the annexation proceeding, only two statutes—Act No. 110 of 1880 and Act No. 49 of 1882—were in existence which had any bearing upon the subject matter. The proceedings were taken upon the assumption that they were authorized by the former act. Was that assumption well founded ?

The town of Vermilionville was, at the date of the proceedings, an existing town, with powers and limits fixed by the Legislature itself. It will not be pretended that the limits fixed by the charter could have been extended, unless authority to that effect had been conferred by express legislative authority. The act which is relied upon as conferring such authority, prescribes "the manner of altering, changing or amending the charter."

It says nothing, in terms, as to a right of extending the boundaries, and the authority to broaden the limits of the town was not granted, unless it is to be found in the words "altering, changing or amending the charter."

In Tax Collector vs. Dendinger, 38 An. 263, this court, referring to that act, said: "It evidently deals with towns as already constituted with powers and privileges defined and fixed by law, and gives them the power, by appropriate amendment, to regulate their internal organization, and the modes and agencies by which these powers may be exercised. It contains no reference whatever to the relations between their inhabitants and the States or parishes, and confers no power, express or implied, to alter or destroy those relations."

In State vs. Warner, 31 Pac. 26, the Supreme Court of Washington, after stating that the issue presented to it was, whether or not the enlargement of the territory of a city was or was not an "amendment of its charter" under a constitutional article permitting certain cities to frame charters for their own government, and providing for amendments to such charters, held that the scope of the constitutional provision went only to the extent of providing that such cities might lay aside their existing system of municipal regulation and control and assume others, not inconsistent with the Constitution and laws of the State, which were more in accordance with their ideas of propriety and convenience, and that it had no relation to the subject of boundaries or territory, and that a general law was necessary upon this subject. We have not the Constitution of that State before us, but its terms on the subject matter seem to be fully as broad as those of Act No. 110 of 1880.

The decision quoted is closely in line with that of Dendinger, and the subsequent passage by the Legislature of Louisiana of Act No. 105 of 1892 bearing specifically upon the matter of "boundaries" shows that that body was aware, as was the court of Washington, of the necessity of additional legislation to convey the power claimed. In People vs. Oakland, 28 Pac. 808, which was an action in the nature of a *quo warranto* brought by the Attorney General for the purpose of ousting the defendant from municipal jurisdiction over certain territory alleged to be outside of the charter limits, the Supreme Court of California said that the stipulation of the parties in the case showed that the city of Oakland was a municipal corporation, and as such claimed and exercised the right and power to govern and tax the inhabitants of a certain territory in addition to that described in its charter. That the right and power thus claimed and exercised was a franchise in addition to and distinct from that of being a corporation, and the exercise of such power by a municipal corporation over the inhabitants of territory outside of the charter limits was the usurpation of a franchise, for which the Attorney General was authorized to bring an action in the name of the people.

In the case at bar, the right and power claimed by the town of Vermilionville was a franchise claimed *in addition to and distinct from that of being a corporation.* As a "corporation" it existed by legislative acts, and its "charter" after the attempted annexation was

still by virtue of the same acts. We are not here referring to the amendments properly so called, which were made at the same time the annexation proceedings took place, which really modified the charter.

There can be no question, therefore, as to the right of the State, through proper proceedings, to have questioned judicially the existence of such a claimed power of extension. It has not, as we have said, thought proper to have done so up to the present time. In the case last cited, where the city of Oakland, having at one time by "an amendment *of its charter*" annexed certain territory to it, had subsequently (under a constitutional provision providing "that when a city charter has been presented to the Legislature, and approved, it shall become the charter and organic law of such city and shall supersede any existing charter, and all amendments thereof"), by the adoption of a "new charter," *cut off* or detached from the town the annexed portion, it was held that the *original annexing of the territory was "an amendment to the charter,"* and therefore the same territory was legally detached, under the provision that "all amendments to the charter" should be superseded by the new charter. The case was decided under special circumstances, which are discussed and commented on in State vs. Warner, which circumstances the court declared removed it from being cited as a precedent therein.

The special features alluded to not appearing in the present case, it furnishes us, in our opinion, no guide in reaching our conclusions. Neither Act No. 49 of 1882, standing alone, nor that act blended or connected with Act No. 110 of 1880, are a sufficient basis for the annexation claimed. Act No. 49 of 1882 evidently refers to towns and villages up to that time unincorporated, as for instance Gretna, in the parish of Jefferson, and not to towns existing already under legislative charters.

The next questions are: (1) Whether, under this condition of law and fact, the parish of Lafayette would have had the right to have proceeded directly on in the performance of its duties under its legal powers, regardless of the annexation, forcing parties who might set up rights based upon the hypothesis that the annexation proceeding had ousted the parish of its jurisdiction in the annexed territory to have recourse to legal proceedings to make good their claim, or whether it would have been forced to halt, and have been driven either to an action by the police jury to have the proceedings

set aside, or declared null, or to have sought relief through a public action by the State through the Attorney General; and (2) whether, if it had originally the right to have ignored the annexation, and to have forced the parties to have come in by way of defence, whether it has lost any of its rights in the premises by its subsequent conduct, and if so, to what extent it has done so.

If there had been legal authority for the annexation of territory to the town of Vermilionville through designated formalities, which had not been strictly followed, the first of these questions would have been presented to us under a phase different from that in which it is actually before us, where it is claimed that there was an *absolute want of power and authority to do the act which was attempted*. It is from this standpoint we have to discuss matters.

In Atchison & Nebraska Railroad Co. vs. Maquilkin, 12 Kansas, 303, it appeared that the city of Troy was incorporated in 1860, under a special act of the territorial Legislature of Kansas, entitled "A bill to incorporate the city of Troy." Under the act certain territorial limits were fixed, and under its act of incorporation it had no power to extend its territorial limits. The city was governed by this act *until 1871*, when it became a city of the third class by virtue of the third class city *act of 1871*, and at the time of the suit it still continued to be governed by the third class city act. In 1869 the mayor and City Council of Troy passed an ordinance extending the boundaries of the city. Upon the hypothesis that the extended limits fell legally within the jurisdiction and under the powers of the town, the latter in 1872 taxed certain property within those limits. The owners of the property enjoined the collection of the tax upon the ground that the annexation attempted was void for want of authority on the part of the city to annex territory. It was claimed on behalf of the city that the Legislature had in 1873, after the injunction was issued, validated the proceeding. The Supreme Court held the ordinance void. It said: The city at the time the ordinance was passed did not have any power to extend its corporate limits. At the time there were no cities of the third class. The first act of the Legislature authorizing the incorporation of cities of the third class was passed in March, 1869, and did not take effect until July, 1869. Even if the city had organized as a city of the third class, as it had the right to do, under the third class city act on and after July 12, 1869, and by that means obtained the power to extend its cor-

FORTY-SEVENTH ANNUAL REPORTS, 1895.      605

President of Police Jury et al. vs. Shayot.

porate limits, still such organization would not have made valid the prior invalid ordinance attempting to extend the boundaries of the corporation passed before said act was passed or took effect.

And neither could the event of the city of Troy becoming a city of the third class under and upon the taking effect of the third class city act of March 2, 1871, with power to extend its limits. make valid said previous invalid ordinance. The annexation of the property to said city was void, not for any irregularity merely in the annexation proceedings, but void because the city had no power to annex it. The tax levied was void, not for any irregularity merely in the tax proceedings, but void because the city had no power to tax it. Both the annexation of said property and the taxing of it were void for want of jurisdiction over the subject matter.

Referring to the act of the Legislature relied on the court said: "Retrospective statutes of a remedial nature, curing the defective execution of some power really possessed by the person, tribunal or officer attempting to exercise it, have often been held valid. But a retrospective statute attempting to create a power, or to cure a defect of jurisdiction, we believe, has never been held valid." Citing Shawnee Co. vs. Carter, 2 Kansas, 115, 134, and Cooley's Constitutional Limitations, 383.

The case at bar presents no question as to the effect of a curative or validating statute. None is claimed; the only claim urged is that the police jury, by its course, has estopped itself from questioning the legality of the annexation, and cut itself off from the exercise of its legal powers. We do not think a political body capable of surrendering its powers absolutely (Bar View School District vs. Linscott, 33 Pacific Rep. 782), though it may, perhaps, through its laches or conduct in some particular instance, temporarily and specially, be controlled in the exercise of those powers. We think the police ju'y was free to resume the exercise of the powers which it temporarily suspended through the institution of this suit.

It does not follow from this that it can ignore acts in the past which have been predicated upon its conduct, and which led parties to deal upon the basis of the view of the situation of affairs which it itself took. Plaintiffs speak of the situation of the defendant, and of those placed in a situation similar to his own, as being *one of exemption from taxation.* There is a misuse of terms in so stating. The defendant has been paying taxes to the town. The power of

taxation remained in the parish, but it permitted its exercise, during several years, to be transferred to other instrumentalities. The public burdens of those parties were simply shifted as to payment from one political corporation to another. If the parish for a number of years permitted the town to perform duties, afford protection, and incur liability, which properly should have fallen upon the parish, and extended to people within the annexed limits none of the advantages of the parish government, and during those years permitted the town to make demand of payment of licenses and taxes of those persons, and to be paid for the same, it would not be equitable or consistent with justice for the parish to force them to pay a second time, and for benefits not received at its hands. The parish, under such circumstances, would practically have permitted, under such a condition of affairs, the town to have acted for and on its behalf in dealing with the people of the annexed territory, and the amount paid to the town would (if benefits could be gauged); be found probably nothing more than a fair equivalent for duties performed in its stead by another. Felix vs. Wagner, 39 An. 394.

We have, however, to deal only with the situation of parties for the year 1893. In the beginning of that year the police jury, directly, positively and in unambiguous terms, asserted its suspended powers, and with it (we assume), its suspended duties, and formally announced by legal ordinance, duly enacted and legally promulgated, that it would exercise its jurisdiction as to licenses over this disputed territory. The license ordinance of 1893 was expressly framed to place beyond the possibility of a doubt the purpose of the police jury to maintain its authority in this regard. If parties subsequently to this publication, and after special demand made upon them to pay their license to the parish, thought proper to decline doing so, and to pay the town, they did so at their own risk. The only question we are called on to decide here is whether the parish of Lafayette had jurisdiction for purposes of taxation for the year 1893 over persons and property within the limits of the territory attempted to be annexed to the town of Vermilionville in 1884, and whether a license ordinance levying licenses within that territory for the year 1893 was legal.

We are constrained to answer both questions in the affirmative, greatly as we regret to be forced to disturb existing conditions. From the reliance placed by defendant upon the case of Felix vs.

Wagner, 39 An. 394, we are led to suppose that possibly the police jury wards of Lafayette parish do not extend into the annexed limits of the town, but if this be actually the case, the record does not show it.

For the reasons herein assigned, it is hereby ordered, adjudged and decreed that the judgment of the District Court be and the same is hereby annulled, avoided and reversed, and it is now ordered and adjudged that the license demanded in this case by the parish of Lafayette, of the defendant Numa Schayot, be and the same is declared and decreed, as to its legality and constitutionality, legal and constitutional, and this cause is hereby remanded to the District Court for further proceedings according to law, costs of appeal to be paid by the appellees; costs of the lower court to abide the final judgment in the cause.