## No. 10,871.

ISAAC R. ADAMS, PRESIDENT OF THE POLICE JURY OF THE PARISH
OF CATAHOULA, ET AL., VS. A. A. FORSYTH AND E. S. ROBERT-
SON, ENUMERATORS.

Act 107 of 1890 purporting to create a new parish called Troy is illegal and unconsti-
tutional, because it increases representation in the House of Representatives
beyond the *maximum* number fixed in the sixteenth article of the Constitution.

APPEAL from the Seventh District Court for the Parish of Cata-
houla, *Ellis, J.*

*F. P. Poché, J. F. Ellis, H. B. Taliaferro and D. N. Thompson* for
Plaintiffs and Appellees:

1. By the restrictions placed to the power of the Legislature to create new
   parishes, the Constitution manifestly intends to subordinate the will of the
   Legislature to that of the people of the parish or parishes to be affected thereby
   through their ballots. Act No. 39 of 1886.
2. Section 14 of Act 107 of 1890 does not purport to create or appoint a board or
   committee of enumerators, but in terms it gives to three designated persons
   *jointly* the power to make *jointly* an enumeration of the inhabitants of the old
   and of the new parish.
3. A special agency, delegated by an act of the Legislature for a particular pur-
   pose, must be strictly pursued, and when the power is conferred on three com-
   missioners, *jointly* to do a certain act, they must all join in executing the duty
   there imposed. 31 Miss. 425; 4 English (Ark.), p. 320.
4. It the purpose of a statute has a single object, to create a new parish, and some
   of its vital provisions are void, the whole act must fail unless sufficient remains
   to affect the object without the aid of the invalid portion. Cooley Const. Limi-
   tations, p. 211, 6th Ed.; 5 Ohio, 497; 13 Wisconsin, 398. The administration of
   justice is the essential purpose of government in Louisiana. Any statute creat-
   ing a new parish without providing constitutional means of administering jus-
   tice within its limits is void. Constitution of 1879, Preamble, Art. 7.

*Luce & Lemle* for Defendants and Appellants.

The opinion of the court was delivered by

WATKINS, J.    Suit was commenced on August 13, 1890, by the
police jury of Catahoula parish, duly authorized by ordinance,
joined by sundry taxpayers thereof, alleging the illegality and un-
constitutionality of Act 107 of 1890, creating the new parish of
Troy, and providing for the organization thereof.

Averring that said act provides for an enumeration of the inhabi-

tants of said parish—that portion of which the new parish is to be formed, and that portion, also, that will remain after its formation—in order to ascertain whether there is the constitutional number in each; and designates three persons who are specially authorized to make said enumeration, and return to the Secretary of State the result thereof; and, further, averring the refusal and declination of one of said enumerators to act in the premises, and the apprehended illegality and nullity of *any* action that might be taken by the two remaining—petitioners prayed for and obtained an injunction restraining further proceedings by them *pendente lite.*

On rule taken by the defendants, *in limine,* the lower judge quashed the writ, on the ground that it had been prematurely and improvidently granted, and from that interlocutory decree the plaintiffs appealed, suspensively.

On the trial of the merits, there was judgment in plaintiff's favor, and the defendants, likewise, appealed.

Therefore, the case is practically consolidated—the two appeals being presented under a single number and title—and stands before us in precisely the same attitude it occupied, originally, in the court *a qua.*

The defendants prefaced their answer with several exceptions, the chief of which are:    1.    That the plaintiffs are without capacity or interest to stand in judgment.    2.   That the subject-matter of this suit lies outside the domain of judicial power.    3. The defendants are incompetent to stand in judgment for the determination of the constitutionality of the act; but, as it is apparent that these questions were decided, and definitely settled in litigation to which the defendants were parties, and settled adversely to prevent contention, there need be no further mention made of them.   State ex rel. Forsyth et al. vs. Judge, 42 An. 1104.

The same may be said of the prematurity and improvidence of the injunction, for, whilst not deciding the question, the logic and purport of our opinion in that case are conclusively against the ruling of the judge *a quo.*    For it proceeds upon the theory that the enumeration contemplated by the statute was the first and fundamental step to be taken in the formation of the new parish, and a condition precedent to its consummation.

Had plaintiffs awaited the completion of the enumeration, and return made to the Secretary of State, an injunction would have

been, manifestly, too late. It is our opinion that the injunction was timely and provident, and quashing it was error. It is, therefore, plain that the injunction should be reinstated at appellee's cost, in both courts, without reference to our decision on the merits.

There are several grounds assigned by petitioners for the unconstitutionality of the legislative act creating the new parish of Troy, but we deem it necessary to take notice of only one, and that is the fifth, which is as follows, viz.: That the act is in violation of, and in conflict with, the provisions of Article 16 of the Constitution in this, that said article fixes the total number of representatives in the General Assembly at "not more than ninety-eight (98) and not less than seventy (70);" and that said act provides that the new parish of Troy shall have one representative—thus increasing the total number to ninety-nine (99), it being in excess of that limitation.

There is, in our opinion, no escape from the conclusion that the act is unconstitutional, on that ground.

It appears from the terms of the act that the territory of which the new parish is proposed to be formed, is to be taken from the existing parish of Catahoula exclusively; and as it has but one representative, under the constitutional apportionment of 1880, the formation of a new parish from part of its territory, which is entitled to one representative, also, the necessary result is to increase the total number of representatives by one—thus giving to the next General Assembly ninety-nine, instead of ninety-eight, members, in violation of the Constitution.

The language of the Constitution is imperative: "Each parish shall have at least one representative. * * * * The number of representatives shall not be more than ninety-eight nor less than seventy." Art. 16.

In Article 17 all the parishes of the State are designated by name, and to each is apportioned its representation in the General Assembly, the total number of representatives aggregating ninety-eight, the *maximum* that is allowed by the preceding article. Hence, if the new parish of Troy is given one representative, the number will be increased to ninety-nine, thus violating one of those constitutional requirements; and if the new parish be disallowed representation altogether, the other will be violated. For it would not do for us to say that a new parish could be formed by an act of the Legislature,

without a representative being provided for, in the face of the constitutional declaration that it shall have one.

A further provision of Article 17 is that "this apportionment"— *i. e.*, the apportionment that is made in that article—"shall not be changed or altered in any manner, until after the enumeration shall have been taken by the State in 1890, in accordance with the provisions of Articles 16 and 17."

Looking to Article 16 to ascertain the manner in which an enumeration is to be made, we find the declaration that it "shall be made in 1890, and subsequent enumerations shall be made every tenth year thereafter, in such manner as shall be prescribed by law," etc.

Now it is an admitted fact that an *enumeration* was made in the year 1890, in the manner required, but that no *apportionment* of representation was made by the General Assembly; it is, therefore, clear that, until some future General Assembly shall make an apportionment different from that designated in Article 17, it must remain in force. But Article 16 further declares that "at its *first session after each enumeration*, the General Assembly shall *apportion* the representation among the several parishes," etc., thus clearly indicating, in the most emphatic language, the duty of the General Assembly to take prompt and immediate action in making an apportionment. We need not say that this precept is *mandatory*, and that an apportionment could not be legally made at a subsequent session of the General Assembly; but it is quite sufficient for us to say that the General Assembly was fully authorized, and, at least, directed to make an apportionment at its first session after the completion of an enumeration, and failed to do it. The consequence is that the General Assembly of 1892-94 will remain just as that of 1888-90 was composed; and if the plaintiffs' case fails, and the act creating the new parsh of Troy is held to be constitutional, its representative can not be permitted to take his seat in the House of Representatives at the next session of the General Assembly, without violating the plain and unambiguous terms of the sixteenth article of the Constitution—as he would evidently be the *ninety-ninth* representative.

It appears to our minds self-evident that the Legislature is powerless in this manner to increase the representation fixed in the Constitution; and equally as much so to create a new parish which would

be entitled to representation, but whose representative could not take any part in legislative proceedings, as such.

Under the express terms of the 16th article of the Constitution declaring that " the number of representatives shall not be more than ninety-eight," etc., it would seem to be impossible for the Legislature to *increase* that number; as it seems clear that the only way in which new parishes, such as Troy, can be created, is by *reducing* the total number of representatives under a new apportionment, and thus leave a margin for their formation.

But those are contingencies that must be provided for in the future, and the instant case must be determined by the state of facts existing at the time the law under consideration was enacted.   For if it was at the time of its passage an unconstitutional law, circumstances subsequently arising could not rehabilitate it and make it constitutional.

A parish created without representation would be an anomaly. The Constitution declares that "representation in the House of Representatives shall be equal and uniform and shall be regulated and ascertained by the total population."   Art. 16.

The new parish of Troy would be quite as much entitled to share in the representation as any other parish in the State; quite as much as the parish of Catahoula.

It is therefore as impossible to conceive of a parish without representation, as of one without the pale of any judiciary system.   A parish is a *complete* political entity, possessed of judicial, political and ministerial functions; and no act of the Legislature creating a new parish can receive sanction as constitutional, which does not guarantee the right of representation.   The guarantee of the act in question is nugatory, because it is repugnant to the Constitution.

That guarantee being read out of the act the new parish would be emasculated of all political power, the existence of which is essential to its existence.   The act in question is null and void.

It is therefore ordered and decreed that the interlocutory decree quashing plaintiffs' injunction be annulled and that said injunction be reinstated at defendant's cost in both courts; and it is further ordered that the judgment pronounced upon the merits be affirmed.