PROVO STY, X
In 1908 the Legislature passed Act 53, page 53, adopted June 22d of that year, entitled:
“An act to create the parish of Evangeline and to provide for the organization thereof.”
Section 10 of the act required the board of supervisors of the parish of St. Landry, out of whose territory the new parish was to be created, to hold an election “to take the sense of the legal voters of said parish in regard to the creation of” said new parish. This election was held on April 13, 1909. The present suit is brought by four taxpayers, residents of, and owning property in, that portion of the parish of St. Landry not to be included in the new parish, to have said Act 53 declared to be unconstitutional, and said election decreed to have been illegal and null, and the proclamation of the Governor, “declaring the parish of Evangeline to have been created,” to be null and of no effect. The parties made defendant are the Governor of the state and the board of supervisors of election of the parish of St. Landry. Certain citizens of the proposed new parish have intervened, and it is they who have defended the suit and are the real litigants. The defendants made no appearance. Plaintiffs are appellants. The interveners and appellees have moved to dismiss the appeal on the ground that this court is without jurisdiction of the case; there not being an amount of $2,000 involved, and the Case not presenting any of the special features which would give this court jurisdiction irrespective of amount involved.
The petition contains the following jurisdictional allegation:
“That petitioners have a material interest in contesting said election because they each have considerable real estate and other property in the city of Opelousas which would be greatly diminished in value were this parish to be divided as proposed.”
We think this allegation has been fully sustained by proof. Each of the plaintiffs testifies that the value of his property in the town of Opelousas, the county seat of St. Landry, would be diminished exceeding $2,-000. These witnesses have testified from their knowledge of the situation. In the absence of contrary evidence, the testimony is conclusive. Far from finding such diminution in value impossible, we should incline to think that some diminution in value would be highly probable, and that the amount named might not be at all impossible. The motion to dismiss is therefore overruled.
The first ground upon which the constitutionality of said Act 53 is assailed is that it proposes to change the line of the parish of St. Landry by a mere majority vote of the electors of the parish, when by article 278 of the Constitution a vote of two-thirds is required for that purpose.
Article 278 speaks only of the change of parish lines; but since it is not possible to create a new parish without changing lines, because the entire territory of the state is already divided into parishes, plaintiffs argue that the article applies to the creation of a new parish, otherwise, they say, an exception would be written into the article, and it would be made to read that a two-thirds vote of the electors should be required to change parish lines in all cases except when the lines are to be changed by the creation of a new parish, in which- case no vote at all shall be necessary. Plaintiffs also argue that the Constitution would hardly require a two-thirds vote of the electors for the mere change of parish lines, which usually involves but an insignificant extent of territory, and leave the Legislature free to cut off the larger and fairer portion of a parish, as in the instant case, without any vote at all.
However strong this argument may seem, the Legislature has put a different interpretation upon this article; and we are not prepared to say that it has erred. Every presumption is in favor of the legality of its *401 action. While it is true that, as the result ,of creating a new parish, parish lines will be changed, yet it does not follow that, in an article purporting to deal with the subject of the changing of parish lines, the subject of the creation of new parishes was intended to be covered. Especially that, on reading articles 277, 278, and 279, as they follow each other, one cannot but be struck by the studied care with which the subjects with which they respectively deal have been kept apart; the first dealing with the creation of a new parish, the second with the changing of parish lines, and the third with the m urging of parishes. These are different subj ¿cts, and not necessarily related; howevtr true it may be that, as an incident to the creation of a new parish, parish lines will be changed. Also, it is noteworthy that,, although parish lines are changed when parishes are merged, yet article 279 allows a merger to take place by a mere majority vote of that one of the parishes which is to be dissolved, so that, even if articles 277, 278, and 279 were held to be in pari materia, it would not be true to say that the Constitution desires that there should be a two-thirds vote for every change of parish lines without exception. We conclude that article 278 has no application to the creation of new parishes. We are fortified in that view by a decision of the Supreme Court of Maryland which, dealing with practically the same question, reached a like conclusion. Daly v. Morgan, 69 Md. 460, 16 Atl. 287, 1 L. R. A. 757.
A more serious objection to said Act 53 is that, at the same session of the Legislature at which it was adopted, another act was adopted which cannot coexist with it under the Constitution. We refer to Act 177, approved July 3, 1908, creating the parish of La Salle. Article 18 of the Constitution requires each parish to have at least one representative in the lower house of the General Assembly, and fixes the membership of said house at “not more” than 116. Now, at the time said two Acts 53 and 177 were running together before the Legislature, and at the time of their adoption, this quota of 116 representatives was full within one representative. It was therefore impossible for the legislature to create more than one parish; for, under said article 18 — as was held by this court in the case of Adams v. Forsyth, 44 La. Ann. 130, 10 South. 622, wherein was involved the attempted creation of the parish of Troy — it is impossible for the Legislature to create a parish without a representative in the Legislature. Under these circumstances, the only question must be as to which one of the said two acts must yield to the other. The answer is that Act 53 must yield, because Act 177 is the later .act, and repeals all laws and parts of laws in conflict with itself. Act 53 is in conflict, since both acts cannot coexist under the Constitution.
In support of the validity of Act 53, it is said that at the time it became a law it was not amenable to the present objection, because at that time Act 177 had not yet been adopted; and that it will not be amenable to said objection by the time it goes into effect (which will not be before 1912), because by that time the Legislature of 1910 will have met and will have reapportioned the representatives and provided Evangeline with its just quota of representation.
To the first part of this argument the answer is that the action of the Legislature itself at the same session destroyed the act by making it absolutely inoperative under the Constitution. It is not more possible for the Legislature to create a new parish without representation, in view of article 18 of the Constitution, than it would be to create one without territory; hence the assignment to another parish of the only representative which was available for Evangeline was just as fatal to the validity of said Act 53 as *403 would have been the assignment to another parish of the territory assigned to Evangeline. The only difference lies in the fact that, while a subsequent Legislature could not by its mere fiat create new territory, it could create additional representatives. And it is this circumstance that lends some plausibility to the argument in favor of the validity of Act 53. But that plausibility vanishes when it is remembered that no one can undertake to promise for the Legislature. Not even can one session promise for another session. The Legislature might validate this Act 53 hereafter by providing a representative ; and it might not. In the meantime, the act is invalid; and, however reluctant this court may be to pronounce acts of the Legislature invalid, it has to do so where such is manifestly the case.
Defendants invoke an estoppel against plaintiffs in this wise: They say that Act 177, creating the parish of La Salle, fixed at a simple majority, instead of at a two-thirds majority, of the taxpayers, the vote required for the approval of the creation of the new parish, the same as does Act 53 for the creation of Evangeline; and that, inasmuch as plaintiffs have contended that the parish of Evangeline failed of creation because of the absence of a two-thirds majority vote, they are estopped from contending that the parish of La Salle was created without a similar vote.
The reply to this is twofold: First, no one is contesting the organization of the parish of La Salle, and, as a consequence, said parish is a fait accompli. Rightly or wrongly, it is a going parish. Its de facto existence has all the effect of a de jure existence. As was said by this court, in the case of Gibson v. Foster, 2 La.. Ann. 508, in reply to the contention that, according to article 12 of the Civil Code, whatever is done in contravention of a prohibitory law is null — '“multa fieri prohibentur quse si facta fuerint obtinent firmitatem.” Between a suit to arrest the operation of a statute by which a parish is sought to be created, and a suit to destroy a parish already created and in full operation, there is quite a difference in the ordinary, practical, everyday administration of public affairs, even though in some particular case it might be shown that there was very little, or no, difference in mere theory. The second reply, and one which is absolute, is that the fact of having ineffectually urged an erroneous legal proposition cannot serve as the basis of an estoppel.
The said Act 53 is fatally defective in another respect. Article 280 of the Constitution provides:
“Whenever a parish shall be enlarged or created from territory contiguous thereto, it shall be entitled to a just proportion of the property and assets, and be liable for a just proportion of the existing debts or liabilities of the parish or parishes from which such territory shall have been taken.” ■
The apportionment here required to be made between the new parish and the old of the property and assets and liabilities of the old parish, is thus required to be made whenever the new parish is created, that is to say, at the time it is created, or, in other words, in the same act in which it is created. The evidence shows that the parish of St. Landry has property and assets and also liabilities, and yet the said Act 53 makes no apportionment of same between it and the new parish.
Doubtless, it would suffice for the Legislature to fix the basis for the apportionment thus required to be made, and let the parties, or the courts, work out the details; but at least must it provide a basis for the apportionment, else there is no basis upon which to make it. The point is not new in jurisprudence, as is shown by the following excerpt from Abbott on Municipal Corporations, vol. 1, p. 85, § 47, which is. supported *405 by a long list of decisions from different states, to wit:
“The Legislature having arbitrary power, as has been said, over the organization of all public corporations, to create or dissolve them, increase or diminish their boundaries, legislate as to their debts or liabilities and property, except so far as the rights of third parties may be affected, it follows that upon the division or annexation of territory it has the right and the power to determine and apportion, in a fitting manner, the obligations and the property of those corporations. It is for the Legislature to determine what extent the property or the inhabitants of the detached portion shall bear the burdens of the organizations to which they formerly belonged. The courts, even under constitutional provisions to the effect that every organization created out of another^ shall be liable for a just proportion of existing debts, do not have the power to determine such proportion. It is held that this is a legislative question. It is for the Legislature to either itself determine what this proportion shall be, or to establish a rule or basis for the division, and, where an act or division imposes what seems to be a disproportionate part of the liabilities or burdens, the courts have no power to inquire and adjust the obligations upon a different basis.”
Another fatal defect of said Act 53 is that it has not assigned the said parish to any railroad district. This, under the reasoning of the court in the decision of Adams v. Forsyth, supra, was essential. By section 2 of said act the proposed new parish is assigned to a judicial, a Supreme Court, a senatorial, a congressional, and a circuit court, district, but not to a railroad district. It was just as necessary to assign it to a railroad district as to these other districts, since by article 289 of the Constitution the entire territory of the state is divided into railroad districts, and the several parishes are assigned to their respective districts. A parish not thus assigned, or, in other words, not within the limits of any of the railroad districts, would be an anomaly.
Holding Act 53 itself to be invalid, any examination of the legality of the election held under it becomes superfluous.
It is therefore ordered, adjudged, and decreed that the said Act No. 53 of the General Assembly of 1908, approved June 22, 1908, be, and is hereby, declared to be unconstitutional, and it and the election held under its provisions on April 13, 1908, to be null and void and of no force and effect; and that the interveners, Theodore Coreil, O. E. Guillory, Rene L. Derpuen, and Armand Coreil, pay the costs of this suit.