Dear Senator Dupre:
You have requested an opinion of the Attorney General on the Louisiana constitutional and statutory provisions pertaining to parish boundaries and potential fixing and changing of these parish boundaries in general, with specific consideration for the boundaries of Lafourche and Terrebonne Parishes. You have submitted a list of enumerated questions outlining your inquiries with regard to specific laws and provisions. Each of your questions are addressed below.
1. Does La.Const. Art. VI § 1 (1974), set forth the exclusive procedure for fixing or changing parish boundaries in Louisiana? If not, what other extrajudicial or judicial procedures are available by law?
La.Const. Art. VI § 1 (1974) does set forth the exclusive procedure for fixing or changing parish boundaries in Louisiana. The Constitution is the supreme law of the state, to which all legislative acts must yield. Macon v. Costa, 437 So.2d 806 (La. 1983). La.Const. Art. VI § 1 (B) (1974) states that:
 [t]he legislature by law may establish and organize new parishes, dissolve and merge parishes, and change parish boundaries if approved by two-thirds of the electors in each parish affected voting thereon at an election held for that purpose. *Page 2 
This constitutional language lays the foundation and therefore the exclusive procedure for fixing or changing parish boundaries in Louisiana. While the Constitution lays this foundation for fixing or changing parish boundaries, the Louisiana Legislature, elected by the State's citizenry, may enact any legislation that the State Constitution does not prohibit. Polk v. Edwards, 626 So.2d 1128, 1132 (La. 1993). The Legislature, pursuant to the constitutional authority provided above, has enacted provisions delegating some of its authority on this matter to individual parishes, but since the Louisiana Constitution is the supreme law in this State, it follows that any provisions that fall outside of the authority granted by the Constitution are therefore unconstitutional and invalid.
Therefore, La.Const. Art. VI § 1 (1974) does set forth the exclusive procedure for fixing or changing parish boundaries in Louisiana, however, pursuant to this authority and procedure, the Legislature has enacted legislation to delegate a portion of this authority to subdivisions of the State through La.R.S. 50:221-228 and La.R.S.33:141-146. The only way to alter the requirements of La.Const. Art. VI § 1 (1974) is through a constitutional amendment. The procedure to amend the Constitution is provided in La.Const. Art. XIII § 1 (1974).
2. If the purpose of fixing a parish boundary is to formally adopt by current ordinance or other means the same boundary "recognized and ratified" in the 1974 Constitution, rather than the establishment of a new boundary, what is the appropriate procedure by the parishes to do so?
If the boundary has already been recognized and ratified pursuant to the 1974 Constitution, then the boundary has already been established under the authority of the Louisiana Constitution. La.Const. Art. VI § 1 (A) (1974) states that "[p]arishes and their boundaries as established on the effective date of this constitution are recognized and ratified."[1] However, if the governing authority of any parish desires to ascertain and fix the boundary line of any adjoining parish, it shall pass an ordinance to that effect fixing a time and place for starting the running of the boundary. La.R.S. 50:221. This statute further states that the governing authority shall then serve the presiding officer of the governing authority of the adjoining parish with a copy of the ordinance and with notice, at least six months in advance, of the time and place of starting the running of the boundary. La.R.S. 50:221. *Page 3 
After a boundary line has been run and marked as prescribed in La.R.S. 50:221, the survey shall be returned to the governing authority of each parish. The survey shall then be filed and preserved in the office of the recorder. La.R.S. 50:222.
Our office is of the opinion that the process outlined in La.R.S.50:221 and 222 allows the boundary of the parishes in question to be established with the certainty of an "on-ground" survey as opposed to the written recorded parish boundaries recognized and ratified in the 1974 Louisiana Constitution.
3. Is a special election required for parish voters to consider the question of fixing or changing a parish boundary? May such question be considered by voters in a regularly scheduled election rather than by special election called for that purpose?
As noted above, La.Const. Art. VI § 1 (B) (1974) states that:
 [t]he legislature by law may establish and organize new parishes, dissolve and merge parishes, and change parish boundaries if approved by two-thirds of the electors in each parish affected voting thereon at an election held for that purpose.
La.Const. Art. VI, § 22 (1974) provides the procedure for certain special elections. It states that:
 [w]hen an election is required in a political subdivision under the provisions of this constitution which require submission to the electors of a proposition or question, the election shall be called, conducted, and the returns thereof canvassed, in accordance with the procedures established by the law then in effect pertaining to elections for incurring bonded indebtedness and special taxes relative to local finance, or as may be otherwise provided by law.
The Louisiana Constitution defines "political subdivision" as a "parish, municipality, and any other unit of local government, including a school board and a special district, authorized by law to perform governmental functions." La.Const. Art. VI, § 44 (2) (1974). Both Terrebonne and Lafourche Parish qualify as political subdivisions and are therefore able to create an election for the purposes of La.Const. Art. VI § 1 (B) (1974).
However, with regard to a "special election," none of the constitutional provisions provided above state that a special election is required for organizing new parishes, dissolving and merging parishes, or changing the boundaries of individual parishes. It only requires that a change of parish boundaries be approved by two-thirds of the electors in each parish affected voting thereon "at an election held for that purpose." It is *Page 4 
the opinion of our office that a regularly scheduled election may suffice if already scheduled in the required time constraints. Therefore, if the Legislature changes the parish boundaries on its own, an election must be held, but no "special election" for that sole purpose is required. While this is the general rule established by the Constitution, the statutory provisions enacted pursuant to this constitutional authority must also be considered.
La.R.S. 50:221, governing the fixing of parish boundaries, does not require a vote, considering the fact that the "fixing" of a parish boundary is, by nature, not a "change" of the parish boundary. However, for the changing of parish boundaries, La.R.S. 33:141 states that "both police juries shall pass ordinances providing for special elections to be held in both parishes within sixty days from the passages of the ordinances." La.R.S. 33:141 provides that the police juries "shall" pass ordinances providing for special elections, which means that if two parishes choose to change a boundary pursuant to this specific provision, a special election is required.
4. Is fixing or changing a parish boundary always subject to a 2/3 vote of the total vote cast by the electors in both parishes?
Yes. La.Const. Art. VI § 1 (B)(1974) states that:
 [t]he legislature by law may establish and organize new parishes, dissolve and merge parishes, and change parish boundaries if approved by two-thirds of the electors in each parish affected voting thereon at an election held for that purpose.
The State Legislature has enacted legislation with regard to establishing, organizing, dissolving, and merging parishes as well as changing parish boundaries. However, La.Const. Art. VI § 1 (B) (1974) only allows such legislation to have effect when the change is approved by two-thirds of the electors in each parish affected.
5. May the parishes impose a vote requirement in addition to the minimum vote required by law, for example, the approval of at least 2/3 of those persons in the parish area or areas directly affected by the change in boundaries?
The Louisiana Constitution states that at least two-thirds of the electors in each parish affected voting thereon, at an election held for that purpose. La.Const. Art. VI § 1 (B) (1974). Because the language specifically applies to two-thirds of the electors in the parish affected, it is our opinion that the Constitution does not allow individual parishes the ability to limit the voting to only areas directly affected by the change in boundaries. *Page 5 
6. Do the provisions of La.R.S. 50:151-157 apply to the fixing or changing of parish boundaries, or just to fixing or changing the boundaries of townships, subject to the requirements of La.R.S. 50:157?
La.R.S. 50:151-157 only apply to the fixing or changing of boundaries of townships, ranges, and section lines. In Chapter 3 of Title 50 of the Louisiana Revised Statutes, regulating the establishment of township, range, and section Lines, La.R.S. 50:121 states that:
 [t]he Register of the State Land Office may cause surveys and resurveys to be made, in order to establish or re-establish township lines, range lines, section lines, corners, and half-mile stations, where the original monuments have been destroyed or lost or are uncertain, or where the lines, corners, or stations were never actually established.
La.R.S. 50:151-157 are also included in Chapter 3 of Title 50 and are therefore only applicable to instances in which when parishes seek to establish or re-establish township lines, range lines, section lines, corners, and half-mile stations, where the original monuments have been destroyed or lost or are uncertain, or where the lines, corners, or stations were never actually established.
7. Do the provisions of La.R.S. 41:1131-1136 apply to the fixing or changing of parish boundaries, or is such procedure limited to state lands?
La.R.S. 41:1131 states that:
 [w]henever there arises a controversy with respect to the boundary line between lands belonging to the state and contiguous and abutting lands belonging to another person, or boundary lines which have never been definitely ascertained, defined or fixed, the state and the party may proceed to the ascertainment, determination and fixing of the boundary by mutual consent, as set forth in this Chapter.
Since the land in question appears to be owned by two separate parish governments and there is no controversy with respect to the boundary line "between lands belonging to the state and contiguous and abutting lands belonging to another person," the State would not be a party involved in the action and La.R.S. 41:1131 would not apply.
8. Do the provisions of La.C.C. Arts. 784, et seq., apply to the fixing or changing of parish boundaries?
La.C.C. art. 785 states that: *Page 6 
 [t]he fixing of the boundary may involve determination of the line of separation between contiguous lands, if it is uncertain or disputed; it may also involve the placement of markers on the ground, if markers were never placed, were wrongly placed, or are no longer to be seen.
There appears to be no legal authority that excludes La. C.C. Art. 784,et seq. from applying to the fixing or changing of parish boundaries. It should be noted that fixing or changing a boundary through these Civil Code Articles does not preclude the need to comply with the constitutional obligation in La.Const. Art. VI § 1 (B) (1974), discussed above.
As noted above, the Constitution is the supreme law of the State, to which all legislative acts must yield. Macon v. Costa, 437 So.2d 806
(La. 1983). Therefore, from a practical point of view, La.C.C. Art. 784,et seq. may be supplemental authority for adjusting the boundary of contiguous lands, but when the boundary involved belongs to a parish, La.Const. Art. VI (which appears contain a more stringent procedure) must be followed.
9. If the parish boundary to be fixed or changed is an inland boundary of a coastal parish subject to La.R.S. 49:6, does that provision supersede other applicable provisions and require the fixing or changing of such boundary by legislative act?
La.R.S. 49:6 (B) specifically states that, "[t]he interior or inland boundaries of all coastal parishes shall remain as now existing or fixed by applicable state laws." Therefore if the boundary to be fixed or changed is an inland boundary of a coastal parish, then the inland boundary of a coastal parish affected by La.R.S. 49:6 would remain "as now existing or fixed by applicable state laws." The applicable law, which governs the fixing or changing of boundaries, is provided in La.R.S. 50:221-228 and La.R.S. 33:141-146. It is our opinion that La.R.S.49:6 requires compliance with La.R.S. 50:221-228 and La.R.S.33:141-146. In addition, and as explained above, these statutory provisions are still only valid to the extent La.Const. Art. VI § 1 (1974) is also satisfied.
10. Is La.Const. Art. VI § 1 (D) (1974), concerning adjustments of assets and liabilities, applicable to the changing of parish boundaries by any lawful means, or is it limited to changes by legislative act? If applicable, by what formula is the "just proportion" to be determined? If determined, is voter approval of such "just proportion" required and by what vote? Must the "just proportion" be determined and set forth in the same ordinance, resolution or act fixing or changing the parish boundary?
As noted above, the Louisiana Constitution lays the foundation for fixing or changing parish boundaries in La.Const. Art. VI § 1 (1974). However, the Louisiana Legislature, elected by the State's citizenry, may enact any legislation that the state Constitution does not prohibit.Polk v. Edwards, 626 So.2d 1128, 1132 (La. 1993). The Legislature, pursuant to the constitutional authority provided above, has enacted provisions *Page 7 
delegating some of its authority on this matter to individual parishes. We can find no other legislation which delegates any further authority citations pursuant to La.Const. Art. VI § 1 (D) (1974).
La.Const. Art. VI § 1 (D) (1974) states that:
 [w]hen a parish is enlarged or established from contiguous territory, it shall be entitled to a just proportion of the property and assets and shall be liable for a just proportion of the existing debts and liabilities of the parish or parishes from which the territory is taken.
Therefore, it follows that since any changing of a parish boundary of a parish in Louisiana is subject to La.Const. Art. VI § 1 (1974), subpart D of this same constitutional provision was also undoubtedly to be applicable to any change. With regard to establishing "just proportion" under La.Const. Art. VI § 1 (D) (1974), the Louisiana Supreme Court inSandoz v. Sanders, 51 So. 436, 439 (La. 1910) held that it is for the Legislature to either itself determine what this proportion shall be, or to establish a rule or basis for the division, and, where an act or division imposes what seems to be a disproportionate part of the liabilities or burdens, the courts have no power to inquire and adjust the obligations upon a different basis. Therefore, pursuant toSandoz, it is the opinion of this office that the Legislature, through its constitutionally granted authority must decide what "just proportion" is.[2]
11. Is preclearance required under the Voting Rights Act for the fixing or changing of parish boundaries that also alter election precincts or otherwise impact elections?
The Voting Rights Act of 1965 was enacted to protect the Fifteenth Amendment's guarantee, that the right to vote shall not be abridged or denied on account of race or color. The Voting Rights Act of 1965, as amended (42 U.S.C.A. § 1973), requires a state or political subdivision, which amounts to a "covered jurisdiction" under 42 U.S.C.A. § 1973b, to refrain from implementing any new "voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting different from that in force or effect," unless it first obtains preclearance for the change from the United States Attorney General or the United States District Court for the District of Columbia.[3]
42 U.S.C.A. § 19731 (c) (2) defines "political subdivision" as any county or parish, except that-where registration for voting is not conducted under the supervision of a county or parish, the term shall include any other subdivision of a State which conducts registration for voting. *Page 8 
With regard to which jurisdictions are covered by the act, the United States Supreme Court has established that all entities having power over any aspect of the electoral process within its designated jurisdictions must obtain prior federal approval before changing any voting practice or procedure. U.S. v. Board of Com'rs of Sheffield, Ala., 98 S.Ct. 965
(1978). Since parishes do have power over the electoral process within their jurisdiction, [4] and a change in the boundary of a parish may have some discriminatory effect on the voting results of the effected area, it is our opinion that preclearance for change in boundary would be required under the Voting Rights Act.
In further support of our opinion, we refer you to another United States Supreme Court case. The United States Supreme Court, inPleasant Grove v. U.S., 479 U.S. 462 (1987), held that a municipality's annexation of inhabited land, and the annexation of vacant land on which the municipality anticipates residential development, constitute changes in voting practices or procedures that require preclearance pursuant to Section 5 of the Voting Rights Act. The court concluded that Section 5 of the Voting Rights Act should be given the broadest possible scope, and should extend to changes in voting practices or procedures that have subtle discriminatory effects as well as those that have obvious discriminatory effects.
Therefore, pursuant to the Voting Rights Act and jurisprudence provided above, it is our opinion that if the boundaries of the parishes of Terrebonne and Lafourche are to be changed, then preclearance from the United States Attorney General or the United States District Court for the District of Columbia is required. However if there is no actual change in the parish boundaries, and the boundaries are simply ascertained and fixed in the location where they are already located, then it is further our opinion that no preclearance would be required.
12. Are any of the statutory provisions applicable to the questions above obsolete or in conflict with other provisions of law or constitutional provisions?
It appears that none of the statutory provisions applicable to the above questions are obsolete or in conflict with any other provisions of law or constitutional provisions. As long as all statutory authority granted by the Legislature to the parishes also satisfies the requirements of La.Const. Article VI § 1 (1974), there are no actual conflicts between the laws. Because of our earlier admonition that the Constitution is the supreme law of the State, from a practical point of view, in order to clear up any misunderstandings, it is important to bear in mind that, in every State statute applicable to parish boundary changes, any such authority bestowed is subject to the provisions of La.Const. Article VI § 1 (1974). It is also important to note that any other pre-existing *Page 9 
boundary procedure statutes (not included in this opinion) were impliedly repealed by La.Const. Article XIV § 18 (1974) because La.Const. Article VI § 1 (1974) now provides the procedure for dealing with parish boundaries and any other statutes conflicted with this provision and expired on the date of ratification of the Constitution of 1974.
In conclusion, it is the opinion of this office that La.Const. Art. VI § 1 (1974) sets forth the exclusive procedure for changing parish boundaries in Louisiana. This constitutional provision requires approval by two-thirds of the electors in each parish affected, if a parish boundary is changed. If actually changing the parish boundaries is not necessary, then the boundaries recognized and ratified by the 1974 Louisiana Constitution may be fixed with greater accuracy, through on-ground surveys, pursuant to La.R.S. 20:221 and 222. If a parish boundary is extended and the parish is enlarged, then the Legislature shall be the proper entity to determine the "just proportion" of the property and assets, as well as the just proportion of increased debts and liabilities associated with the boundary change. It is further the opinion of this office that if parish boundaries are to be changed, preclearance from the United States Attorney General or a proper United States District Court is necessary under the Voting Rights Act, because the changing of any voting practice requires approval even if the discriminatory effects are minimal.
We trust this adequately responds to your request. If you should have any questions about the response contained herein, please feel free to contact our office.
Yours very truly,
 JAMES D. "BUDDY" CALDWELL ATTORNEY GENERAL
 BY: _________________________
 DANIEL D. HENRY JR. Assistant Attorney General
JDC/DDH/jv
[1] La.Const. Art. VI § 1 (A) (1974) serves as an implied repeal of any provisions of any boundary procedure statutes existing prior to the Constitution of 1974, since it provided that all parish boundaries were recognized and ratified, and also provided a basic procedure for changing or fixing parish boundaries. Therefore any pre-existing boundary procedure statutes would conflict with the Constitution of 1974 and expired on the date of ratification of the Constitution of 1974.
[2] The legislative power of the State of Louisiana is vested in the state legislature, consisting of a Senate and a House of Representatives, pursuant to La.Const. Art. Ill § 1 (1974).
[3] It should be noted that the Voting Rights Act of 1965 remains valid and enforceable even though its constitutionality was recently challenged in the United States Supreme Court case, Northwest AustinMunicipal Util. Dist. No. 1 v. Holder., ___ U.S. ___, No. 08-322,Slip Opinion (U.S. 6/22/09).
[4] La.Const. Art. VI § 22 (1974) grants political subdivisions the power to submit propositions or questions to the electors within the parish in a manner provided for by law.