LAND, J.
The relators, as residents, taxpayers, and property owners of the parish of Calcasieu and other parishes, instituted a mandamus proceeding against Jared Y. Sanders, Governor of the state of Louisiana, to compel him to proceed without unnecessary delay to issue the commissions and to make the appointments necessary according to law for the organization of Jefferson Davis parish, alleged to have been created by Act No. 77 of 1910.
The Governor, through his counsel, the Attorney General, answered that said statute was inoperative and without legal effect, because it was conditioned on its ratification by a majority of the qualified electors of the parish of Calcasieu, voting for or against the creation of said parish of Jefferson Davis, and because a majority of said electors had voted against the creation of said parish.
J. G. Gray and other taxpayers of the parish of Calcasieu intervened in the suit, and opposed the granting of the mandamus prayed for by the relators.
The case was tried, and there was judgment in favor of respondent. Relators have appealed.
Act No. 77 of 1910, to create, establish, and organize, etc., the parish of Jefferson Davis, after providing for the creation of said parish out of a certain described portion of the parish of Calcasieu, with one representative in the General Assembly, and after assigning the new parish to certain election and judicial districts, and fixing a temporary parish seat, and after providing for a division of the assets and liabilities of the old and new parishes, further provides as follows, in section 6, to wit:
“That this act shall be inoperative and of no effect unless a majority of the duly qualified electors of the parish of Calcasieu as now constituted, who participate in the congressional election to -be held on the 8th day of November, 1910, and voting for or against the creation of the parish of Jefferson Davis, _ shall vote in favor of the creation of said parish.”
The same section, after providing for the election to take the sense of said electors on said proposition, etc., continues as follows:
“This act shall become effective and said parish shall be created subject to the foregoing provisions, thirty days after the promulgation of the returns of said election as herein provided showing a majority of voters of the parish of Calcasieu as now constituted who vote upon said question, shall have voted in favor of the creation of the parish of Jefferson Davis.”
It is admitted that at the referendum election held pursuant to the statute in question a majority of the votes cast was against the creation of the parish of Jefferson Davis.
[1, 2] Relators contend that the referendum provisions of Act No. 77 of 1910 are unconstitutional, because the Legislature alone has the authority to create a new parish, and cannot- delegate this power of legislation to the people. Article 277 of the Constitution of 1898 reads:
“The General Assembly may establish and organize new parishes, which shall be bodies corporate, with such powers as may be prescribed by law, but no new parish shall contain less than six hundred and twenty-five square miles, nor less than seven thousand inhabitants; nor shall any parish be reduced below that area, or number of inhabitants.”
Article 21 of the same instrument reads:
“The legislative power of the state shall be vested in a General Assembly, which shall consist of a Senate and House of Representatives.”
Article 48 of the Constitution of 1898 reads in part:
“The General Assembly shall not pass any local or special law on the following specified *275 subjects: * * * For the opening and conducting of elections, or fixing or changing the place of voting.”
Article 31 reads:
“Every law enacted by the General Assembly shall embrace but one object, and that shall be expressed in the title.”
These four articles form the text of the contentions of the relators. But in the discussion of the issues raised in this case, it must be premised that the General Assembly of Louisiana does not derive its power of legislation from the Constitution of 1898, but from the people of the state, and that the true question before the court is whether the referendum provisions of the statute are prohibited by the organic law. There is no direct constitutional prohibition of such legislation; but it is argued that article 21 prohibits by inference the delegation of legislative power to the people. It may be conceded that the people cannot directly legislate; but it does not follow that the Legislature is without power to enact laws, subject to ratification by the voters of a particular district. The Supreme Court of this state, in 1853, decided that such referendum legislation was constitutional. See Police Jury v. McDonough, 8 La. Ann. 341. In 1852, the Legislature enacted a statute empowering police juries and municipal corporations to subscribe to the stock of corporations undertaking works of internal improvements, but providing that no ordinance passed under the provisions of the act should be valid, or take effect, until approved and ratified by a majority of the voters on whose property the tax was proposed to be levied. The court held that such conditional legislation was constitutional. Slidell, C. J., after citing numerous authorities and the act of Congress of July 9, 1846, submitting thé question of the retrocession to the state of Virginia, of the county of Alexandria, in the district of Columbia, to a vote of the qualified electors of that country, said:
“In conclusion upon this point, we have to say that we find nothing in the statute of 1852 repugnant to the Constitution or the spirit of representative government; and it seems to us a matter of surprise that the caution of the Legislature, in its grant of the taxing power, should be made a subject of reproach. We think, on the contrary, that there was praiseworthy discretion in thus allowing the voice of the people of the respective parishes to be expressed, instead of allowing the local authorities to conclude definitively the imposition of a burden for a novel and untried purpose.”
The learned Chief Judge also cited several previous acts of the General Assembly of Louisiana, submitting questions of the removal of parish seats and the consolidation of the municipalities of New Orleans to the vote of the people specially interested.
In City of New Orleans v. Graihle, 9 La. Ann. 561, the same court again held—
“that the provision in the act of the Legislature of 1852, referring it to the voters on whose property the tax was to be levied to decide whether the ordinance imposing the tax should take effect, did not conflict with the letter or the spirit of the Constitution.”
The eases above cited are in accord with the general jurisprudence, as stated by Judge Cooley, as follows:
“Eor like reasons, the question whether a county or township shall be divided and a new one formed, or two townships or school districts formerly one be reunited, or a city charter be revised, or a county seat be located at a particular place, or after its location removed elsewhere, or the municipality contract particular debts, or engage in a particular improvement, is always a question which may with propriety be referred to the voters of the municipality.” Const. Lim. (7th Ed.) 167, 168. Aliter, as to general laws. Id.
The inherent power of the General Assembly of this state to enact referendum laws in matter of local concern is too well settled by legislativé and judicial construction for further controversy. The Constitutions of 1879 and 1898 contain identical provisions relative to the creation of new parishes. In 18S6, the Legislature created the parish of Acadia, subject to the approval of the voters of the parish of St. Landry. See *277 Act No. 39 of 1886. In 1908, the Legislature created the parish of La Salle, subject to the approval of the voters of the parish ■ of Catahoula. See Act No. 177 of 1908. Both of these acts were duly ratified by the people. In 1908, the Legislature created the parish of Evangeline, subject to the approval -of the voters of the parish of St. Landry. This act was also ratified by the people, but 'was declared unconstitutional, on the ground that a parish cannot be created without at least one representative. See Sandoz v. Sanders, 125 La. 396, 51 South. 436. While «eminent counsel assailed the constitutionality ■of that act on numerous grounds, it never occurred to them that the statute was un- • constitutional because of its referendum provisions. By Act No. 302 of 1910, the Legislature applied the principles of the initiative, referendum, and recall to the government by commission of cities of a certain ■class. The city of Shreveport is now under .that form of government.
To paraphrase the language of Chief Justice Eustis, supra, we find nothing in the referendum section of Act No. 77 of 1910 re,pugnant to the Constitution or the spirit of .representative government. We think that Act No. 77 of 1910 has but one object, i. e., the creation of the parish of Jefferson Davis; and that section 6 merely provides a method ■of effecting the object. We do not think that section 6 provides for the opening and conducting of elections in the sense of article 48, because it expressly provides that ■the election shall be held under the general «election laws of the state.
[3, 4] Conceding, for the sake of the argument, that section 6 of the statute in question is unconstitutional, it by no means follows that the other sections can stand alone ■as independent legislation. The lawmaker in plain words provided that the act should ■be inoperative and of no effect, unless ratified by a vote of the people. Therefore the operation of the act was suspended to await the happening of the condition, and, the condition having failed, the act never acquired the force and effect of law. The intent of the Legislature that the creation of the new parish should depend on the ratification of the act by the voters of the parish of Calcasieu is manifest on the face of the statute. In the nature of things, conditional legislation, like a conditional contract, is a unity, and the condition cannot be eliminated without destroying the law or the contract in its entirety. The Legislature having declared in express terms that the operation of the first five sections of the act should depend upon the result of the election provided for in the sixth section, all the provisions “are essentially and inseparably connected in substance.” Cooley, Const. Lim. (7th Ed.) 247. In Watson v. McGrath, 111 La. 1098, 36 South. 204, this court said:
“A statute may be constitutional only in part, or with regard to certain persons or things, or with regard to a certain point of its operation, and in other respects unconstitutional. The rule is to let it have operation within the scope of its constitutionality, if the legislative intent to that effect is clear and unmistakable. Moore v. City of New Orleans, 32 La. Ann. 726.”
The act now under consideration has but one object, i. e., the creation of a new parish, and the legislative intent is clear that the operation of the law should depend on its ratification by the people.
We do not deem it necessary to discuss the question of the constitutionality of the constitutional amendment of 1910, ratifying and approving the provision of Act No. 77 of 1910. The subordinate issues involved were correctly decided by our learned Brother below.
It is therefore ordered that the judgment appealed from be affirmed; appellants to pay costs of appeal.