(75 South. 491)

No. 22490.

CITY OF GRETNA et al. v. BAILEY, Secretary of State, et al. (CALDARA et al., Interveners).

(May 14, 1917.)

*(Syllabus by the Court.)*

1. MUNICIPAL CORPORATIONS ⊝⟹1016—POWER TO PROSECUTE AND DEFEND SUITS — INJUNCTION.

A municipal corporation, being a creature of the Legislature, cannot question the authority of its creator to amend or abrogate its charter, except in so far as the Legislature attempts to exceed its own constitutional authority. But the General Assembly is as well bound not to violate the mandates expressed in the Constitution as a corporation created by the Legislature is controlled by its statutes. Hence a municipal corporation, having authority to prosecute and defend suits in the courts, may invoke the protection afforded by the Constitution to prevent a violation of its rights. The decision to the contrary in Mayor and Council of the City of Carrollton v. Board of Metropolitan Police et al., 21 La. Ann. 447, is overruled.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 2189.]

2. INJUNCTION ⊝⟹114(3)—LOCAL STATUTES—PARTIES DEFENDANT—STATE OFFICERS.

The state officials whose duty and intention it is to tabulate the returns and promulgate the result of an election in which a special and local statute appears to have been adopted by a majority vote of the electors of a municipality affected by the statute, are the proper defendants in an injunction suit by the municipal corporation to prevent the law from going into effect, on the ground that it violates the Constitution.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 211–218.]

3. CONSTITUTIONAL LAW ⊝⟹65—LEGISLATIVE DEPARTMENT—DELEGATION OF AUTHORITY—SUBMISSION OF FORM OF MUNICIPAL GOVERNMENT.

The submission by the Legislature of a special and local statute proposing a new form of government for an existing municipal corporation to a vote of the electors of the municipality for adoption or rejection is not a delegation of the authority or functions of the Legislature.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 116.]

4. COURTS ⊝⟹42(5)—CREATION OF CITY COURT—CONSTITUTIONALITY OF STATUTE.

The Legislature has no authority to create a city court, even in a parish ward containing a city of more than 5,000 inhabitants, except in the place and stead of the justice of the peace court, which shall be thereby abolished. Therefore section 40 of Act No. 2 of 1916, attempting to create the city court of the city of Gretna with jurisdiction concurrent with that of the justice of the peace for a period of four years, violates articles 84 and 96 of the Constitution.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 168, 181–183.]

5. STATUTES ⊝⟹211 — SUBJECT AND TITLE—CONSTITUTIONAL PROVISIONS.

As the title is an essential part of a statute, the recital contained in the title of a special or local statute that due notice was given of the intention to apply for the passage of the act is contained in the act, within the requirement of article 50 of the Constitution.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 288.]

6. STATUTES ⊝⟹64(4)—PARTIAL UNCONSTITUTIONALITY—EFFECT.

A statute that is in part unconstitutional and invalid must be decreed entirely invalid if its provisions are so interrelated that it cannot be presumed that the Legislature would have enacted the provisions which do not violate the Constitution independently of the provisions that are found to be unconstitutional or invalid. That doctrine is particularly applicable to a referendum statute, because of the improbability that a majority of the electors who voted for its adoption or rejection would have voted for the adoption of the provisions that do not violate the Constitution, independently of the provisions subsequently decreed to be unconstitutional and invalid.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 61, 195.]

Appeal from Twenty-Second Judicial District Court, Parish of East Baton Rouge; H. F. Brunot, Judge.

Suit for injunction by the City of Gretna and others against James J. Bailey, Secretary of State, and Paul Capdevielle, Auditor; J. H. Caldara and others, interveners. Motion to dissolve the writ referred to the merits, and judgment for plaintiffs perpetuating the writ, and the defendants and interveners appeal. Affirmed.

See, also, 140 La. 363, 72 South. 996.

A. V. Coco, Atty. Gen., for appellants. Miller, Miller & Fletchinger, of New Orleans (Wm. A. Dixon, of New Orleans, of counsel), for interveners. L. E. Hall and P. A. Sompayrac, both of New Orleans, for appellees. Stubbs, Theus & Grisham and Hudson, Potts

141 LOUISIANA REPORTS

Bernstein & Sholars, all of Monroe, amici curiæ.

O'NIELL, J. In 1916 the General Assembly enacted a special statute, Act No. 2 of the session of that year, providing or proposing a commission form of government under a new charter for the city of Gretna. It was provided in section 41 of the act that the statute should not become operative in any respect unless it should be approved by a majority of the qualified electors of the city voting at a special election to be held for that purpose, under the general election laws of the state and under the supervision of the board of supervisors of elections, on the third Tuesday in September, 1916. A majority of the votes cast at the election held on that date—that is, on the 19th of September, 1916—were in favor of the adoption of the new charter and commission form of government.

The city of Gretna, in its corporate name and capacity, and the mayor and board of aldermen, in their official capacity, and as citizens and taxpayers of the municipality, brought this proceeding by injunction to prevent the secretary of state and the state auditor from tabulating the returns and promulgating the result of the election. The plaintiffs alleged in their petition that there were certain irregularities in the election, and that, in reality, a majority of the votes were not cast for or in favor of the adoption of the new charter or commission form of government. But those allegations and contentions have been abandoned by the plaintiffs, and need not be considered further. The main allegations of the petition on which the injunction was prayed for, and in fact the only contentions on which the plaintiffs rely for the maintenance of the injunction, are that the Act No. 2 of 1916 is unconstitutional and inoperative, for reasons which will be stated hereafter.

In answer to the rule to show cause why the writ of injunction should not issue, the defendants first pleaded that the district court in the parish of East Baton Rouge had not jurisdiction in the premises; that the suit should have been brought at the place where the election was held. In the alternative, in the event that plea should be overruled, the defendants urged the following as reasons why the injunction should not issue, viz.: (1) That the suit was premature, because the election returns were not yet promulgated; (2) that they, the defendants, were without right or authority to defend the suit in so far as it was an election contest, or to defend the attack upon the constitutionality of the statute; (3) that the acts of the defendants in tabulating the returns and promulgating the result of the election would be the performance of purely ministerial duties, and would not in any manner affect the rights of the plaintiffs or cause them injury. Hence the defendants pleaded: (4) That the plaintiffs' petition did not disclose a right or cause of action.

The application for a preliminary injunction was submitted on the pleadings set forth above, and judgment was rendered making the rule absolute and issuing the writ.

The defendants then made application to this court for a writ of prohibition to arrest the proceedings in the district court; and the matter was brought up on a writ of certiorari. In that proceeding it was held that the district court had jurisdiction in the premises, and the relief prayed for by the defendants was therefore denied. See City of Gretna et al. v. Bailey, Secretary of State, et al., 140 La. 363, 72 South. 996.

Resuming proceedings in the district court, the defendants filed a motion to dissolve the writ of injunction. They alleged that the mayor and aldermen of the city had voted in the election complained of, and were thereby estopped from questioning its legality or the constitutionality of the act under which it was held; and they alleged that the mu-

nicipal corporation, being a creature of the Legislature, had no right to question the constitutionality of an act of the Legislature prescribing a form of government for the city. They alleged that they, the defendants, were not required by Act No. 2 of 1916, nor by the general election law, to tabulate the returns or promulgate the result of a special election of the character of that in contest, and that they would not do so. By mutual consent of the parties hereto the motion to dissolve the injunction was referred to the merits.

The defendants then filed an answer reiterating the contentions made in their answer to the rule and in their motion to dissolve the writ, and denying that the statute in question was, for any reason, unconstitutional or inoperative.

The plaintiffs filed a plea of estoppel alleging that, by the allegation that the tabulating of the returns and promulgating of the result of the election would be the performance of a ministerial duty on the part of the defendants, the latter were estopped from contending in their motion to dissolve the writ, or in their answer to the suit, that they were not required and did not intend to tabulate the returns or promulgate the result of the election.

Many citizens and taxpayers in the city of Gretna, about 80 in number, filed a petition of intervention in which they joined the defendants in their opposition to the plaintiffs' demands.

On trial of the suit upon its merits judgment was rendered in favor of the plaintiffs declaring the Act No. 2 of 1916 unconstitutional, and perpetuating the writ of injunction. The defendants and interveners prosecute this appeal. We are not informed by the opinion or judgment of the district court on what particular ground or grounds he maintained the writ of injunction.

## Opinion.

[1] In support of the contention that the municipal corporation of Gretna, being a creature of the Legislature, has no right to question the constitutionality of a statute changing the form of government of the city, the defendants rely upon the decision rendered in Mayor and Council of the City of Carrollton v. Board of Metropolitan Police et al., 21 La. Ann. 447, and that rendered in Town of Donaldsonville v. Police Jury of Ascension Parish, 113 La. 16, 36 South. 873.

The latter decision has no application to the question before us. The doctrine announced was that a municipal corporation had no right of action to prevent by injunction the collection of a tax claimed by the police jury of the parish from one of the residents of the town on property situated within the town. The court took occasion to say that there was no question of the town's right to maintain an action to protect an interest of the municipality, but that the only interest involved in that case was the personal interest of the individual taxpayer.

In the earlier of the two decisions cited it was held that a municipal corporation had no authority or right of action to question the constitutionality of a statute by which the state Legislature attempted to take away the city's charter power and authority over its police department and give that authority and control to an institution styled the board of metropolitan police. The doctrine of that decision is unsound and illogical. Of course, a municipal corporation, being a creature of the Legislature, cannot question the authority of the creator of its charter to amend the same, except in so far as the Legislature attempts to exceed its own constitutional authority. But the General Assembly is as well bound not to violate the mandates expressed in the Constitution as a corporation created by the Legislature is controlled by its statutes. It would be an absurdity to hold that a corporation created by the Legislature, with authority to prosecute and defend suits in the courts, cannot invoke the protection afforded by the Constitution to prevent a vio-

lation of the rights granted to it. The decision cited in support of that doctrine is more of a historical incident than a proposition of law, and we feel no compunction in overruling it.

The city of Gretna was incorporated under a law of this state, with a population exceeding 5,000 inhabitants, when the Legislature proposed, by the Act No. 2 of 1916, to abrogate the municipal charter and reincorporate the city under a commission form of government. The municipal corporation, acting through its mayor and board of aldermen, had ample authority to proceed by injunction to prevent a violation of any provision of the Constitution by a legislative attempt to change the form of government or abrogate or amend the charter of the municipality. The fact that the mayor and aldermen, as electors, participated in the election, by voting against the adoption of the proposed new charter and commission form of government, does not affect the right of the municipality to contest the constitutionality of the law under which the election was held, and is therefore a matter of no importance.

[2] The belated denial by the defendants of their authority or intention to tabulate the returns or promulgate the result of the election cannot avail as a defense to this suit. They made no such plea in their answer to the rule to show cause why the preliminary injunction should not issue. On the contrary, their allegation or contention that the tabulating of the returns and promulgating of the result of the election would be the performance of a ministerial duty on their part implied that they intended to perform that duty. It is true the Act No. 2 of 1916 did not in terms declare that the secretary of state and the state auditor should tabulate the returns and promulgate the result of the election; but it did provide, in section 41, that the election should be held under the general election laws, and they provide for the tabulation of the returns and promulgation of the result of an election by these state officials.

Our opinion is that they whose duty and intention it was to put the statute into effect by tabulating the returns and promulgating the result of the election were the proper defendants in an action to prevent the law from going into effect, on the ground that it violated the Constitution.

[3] We come then to the questions of constitutionality and validity of the statute in contest. The first contention of the plaintiffs in that respect is that the Legislature had no right to delegate to the electors of the city of Gretna the legislative authority to enact or adopt a state law, even though it was a special and local statute affecting only the inhabitants and taxpayers in that municipality. Pretermitting that question, the plaintiffs contend that the statute never became operative, because of the provision in section 41 that the act should not become operative in any respect unless it should be approved by a majority of the electors voting at the special election to be held for that purpose. They argue that, as the statute did not become operative in any respect until it was approved by a majority of the electors who voted in the election, therefore the provision for the election itself had not become operative when the election was held. That sounds too much like choplogic. It would mean that the express provision for holding the election on a date stated in the statute had not become operative when the election was held, and that the approval by a majority of the electors who voted in the election did not make the statute operative in respect to the holding of the election. The provision and authority for holding the election was not suspended while the election was being held.

It is well settled that a provision in a special or local statute that it shall not become

operative unless it be approved by a majority of the electors voting at an election to be held within the territory in which the law is to operate is not a delegation of the legislative authority to the electors of the territory to be affected. See Cooley on Constitutional Limitations (7th Ed.) p. 166; Chicago Term. Transfer Ry. Co. v. Greer, 223 Ill. 104, 79 N. E. 46, 114 Am. St. Rep. 313; Police Jury v. McDonough, 8 La. Ann. 341; Edwards v. Police Jury, 39 La. Ann. 855, 2 South. 804; State ex rel. Carey et al. v. Sanders, Governor, 130 La. 272, 57 South. 924.

The plaintiffs contend that the provisions of the first section of the statute dividing the municipality into three wards and providing for the governing authority cannot be put into practical operation. That section provides that the legislative, executive, and judicial powers of the city shall be vested in a mayor and three other commissioners; that the first mayor and other three commissioners shall be appointed by the Governor, and shall hold office until the first Tuesday after the third Monday in April, 1920, on which date, and every four years thereafter, a mayor and three other commissioners shall be elected by the qualified electors of the city; that the commissioner of public affairs shall be ex officio mayor; that the commissioner of finance shall be ex officio treasurer; and that the other two commissioners shall be, respectively, the commissioner of public health and safety and the commissioner of public parks and streets; that the commissioner of public affairs, ex officio mayor, shall be elected by the electors of the city at large, but that the other three commissioners shall be elected by wards, one and only one to be elected from each ward. Manifestly the latter requirement cannot be enforced, because no means is provided nor authority given to determine which one of the commissioners shall be elected from any particular ward. In the event of there being two sets of candidates for commissioners, or two candidates for the office of any one of the commissioners (except the commissioner of public affairs, ex officio mayor), the election of two commissioners from one ward could not be prevented. To illustrate, there is nothing to prevent a qualified elector in any particular ward of the municipality from being a candidate and being elected commissioner of finance, and another in the same ward from being elected commissioner of public safety, or to prevent three qualified electors in the same ward from being elected, respectively, commissioner of finance, commissioner of public health and safety, and commissioner of public parks and streets. And there would be no authority for depriving any one of them of his right to hold the office. The impracticability of these provisions of the statute arises from the separate designation of each commissioner, requiring them all to be elected at the same time and attempting to provide that not more than one of them shall be elected from each ward. It is contended by the defendants and interveners that the provisions of section 1 of the act, in so far as they may prove to be impossible of enforcement, may be corrected by another act of the Legislature. That is true; but, unless the error should be corrected by an amending statute, there would be a serious hiatus in the charter; and there is no assurance that a majority of the electors who voted in the special election held on the 19th of September, 1916, would have voted in favor of adopting the commission form of government if they had understood the impracticability of the provisions for electing the governing officials of the city. However, the other complaints that the statute is invalid refer to its violation of certain provisions of the Constitution; and we shall rest our decision upon them.

Section 37 of the act declares that all property, real and personal, within the city

of Gretna, and all persons, firms, or corporations within the city shall be exempt from all taxes and licenses levied by the parish of Jefferson, in which the city of Gretna is situated, provided that the city of Gretna shall pay to the parish of Jefferson its proportion of all the expenses which by law bear upon the whole parish, such as the expenses of the parish jail, the courthouse, the criminal expenses, public schools, etc., which proportion is to be determined by the proportion that the assessed value of the property within the city limits bears to that in the parish of Jefferson, as shown by the assessment rolls of the parish assessor for the preceding year, and that the amount of the city's share of the expenses of the parish shall be paid by the city council to the president of the police jury of the parish semiannually, within 20 days after the 1st day of January and the 1st day of July of each year. The complaint is: (1) That the statute requires the municipal corporation to levy taxes partly for parochial purposes, in violation of article 224 of the Constitution, which provides that the taxing power is to be exercised by municipal corporations for municipal purposes only; and  (2) that the exemption of all persons, firms, and corporations within the city from the payment of license taxes levied by the parish of Jefferson, on the condition stated, violates article 225, which declares that taxation shall be equal and uniform; and that it violates the last paragraph of article 229 of the Constitution, which permits the General Assembly to exempt from the payment of parochial licenses only the municipalities levying license taxes equal in amount to those levied by the police jury of the parish in which the municipality is situated. Strange to say, the plaintiffs do not contend that section 37 of the statute violates the provision of article 48 of the Constitution that the General Assembly shall not pass any local or special law exempting property from taxation.

The contentions that section 37 of the statute in question violates articles 224, 225, and 229 of the Constitution, although urged separately may be regarded as one; that is, that instead of exempting the occupations and business conducted within the limits of the municipal corporation from the payment of license taxes levied by the parish, on condition that the municipality shall levy license taxes equal in amount to those levied by the police jury of the parish, and limiting the municipal authorities to the levying of taxes for municipal purposes only, the Legislature has attempted to exempt the occupations and business carried on within the limits of the municipality from the payment of license taxes levied by the parochial authorities, on the condition that a certain proportion of the taxes levied and collected by the municipality shall be paid over to the parish to be used for certain parochial purposes.

As authority for the proposition that the Legislature is forbidden by the Constitution to exempt the occupations or business done within municipal corporation from the payment of parochial licenses, except upon the condition that the municipality shall levy license taxes equal in amount to those levied by the police jury for parochial purposes, the learned counsel for the plaintiffs cite the decision rendered in the case of Swords, Sheriff and Tax Collector, v. Baillio, 105 La. 329, 29 South. 942. What was said on that subject in the case cited was not necessary for the decision, and may be regarded as mere obiter dicta. In the case cited a special and local statute by which the Legislature attempted to exempt the occupations or business carried on in a municipal corporation having a population less than 2,500 inhabitants from the payment of parochial licenses on condition that the municipal authorities should levy license taxes equal in amount to those levied by the police jury of the parish (Act No. 141 of 1900) was held to be

CITY OF GRETNA v. BAILEY

violative of the provision of article 48 of the Constitution that the General Assembly shall not pass any local or special law granting to any corporation any special or exclusive right, privilege, or immunity, or mending or extending the charter thereof, excepting municipal corporations having a population not less than 2,500 inhabitants. The statute under consideration in that case, being a special and local statute, attempting to give a special and exclusive right, privilege, or immunity to a particular municipal corporation having a population less than 2,500 inhabitants, was a direct violation of the prohibition expressed in article 48 of the Constitution. For that reason the statute was declared unconstitutional; and what was said as to the constitutionality or unconstitutionality of a general law exempting the occupations and business carried on in all municipalities having a population less than 2,500 inhabitants from the payment of parochial license taxes, or of a special law exempting the occupations and business carried on in a particular municipal corporation having a population of 2,500 or more inhabitants from the payment of parochial licenses, was merely an academic discussion of the subject. For example, it was said that there was no necessity for inserting the last paragraph in article 229 of the Constitution of 1898 (corresponding with article 206 of the Constitution of 1879 as far as that article went), unless, by reason of some other provision of the Constitution, the General Assembly was prohibited from passing a law exempting the occupations or business conducted in municipalities from the payment of parochial licenses. And it was said that, although no such prohibition was contained in article 48 of the Constitution, it appeared in article 225, in the provision that taxation should be equal and uniform throughout the territorial limits of the authority levying the tax. That declaration was entirely irrele-

vant to the question of constitutionality of the statute then under discussion, because that statute (Act No. 141 of 1900) did contain the condition required by the last paragraph of article 229 of the Constitution of 1898, that the municipal authorities should impose license taxes equal in amount to those levied by the police jury of the parish in which that municipality was situated; and the only objection to the constitutionality of the act was the fatal objection that it was a special statute purporting to grant a special or exclusive right, privilege, or immunity to a municipal corporation having a population less than 2,500 inhabitants, in direct violation of the prohibition in article 48 of the Constitution. The provision in article 225 of the Constitution that taxation shall be equal and uniform throughout the territorial limits of the authority levying the tax, and that all property shall be taxed in proportion to its value, to be ascertained as directed by law, has no application to license taxes, which article 229 requires shall be graduated. See Standard Oil Co. of Louisiana v. Police Jury of Red River Parish, 140 La. 42, 73 South. 802. It goes without saying that a license tax must be uniform on every occupation or business within the same grade and classification established by the statute levying the license tax. To say that the Legislature cannot deprive the parochial authorities of the right to impose license taxes upon the occupations or business carried on within the limits of an incorporated municipality in the parish, without violating the provision of article 225 of the Constitution that taxation shall be equal and uniform throughout the territorial limits of the authority levying the tax, would seem to be a begging of the question. The question is: What are the territorial limits of the authority levying the tax? In Whited, Tax Collector, v. Lewis, 25 La. Ann. 569, it was held that the territorial limit of the authority of the police

jury to levy parish taxes was within the control of the Legislature. Referring to a statute of 1872 amending the charter of the city of Monroe, it was held that the eleventh section of the act, exempting persons carrying on any trade, occupation, business, or profession within the city of Monroe from the payment of license taxes levied by the parish of Ouachita, was not unconstitutional. Article 118 of the Constitution of 1868, then in force, declared that taxation should be equal and uniform throughout the state, and that the General Assembly should have the power to exempt from taxation property actually used for church, school, or charitable purposes. It was contended that, under those provisions of the Constitution, the Legislature was forbidden to exempt the occupations or business carried on within a municipal corporation from the payment of license taxes imposed by the police jury of the parish in which the municipal corporation was situated. But it was held that the Legislature, having conferred the power upon each subdivision of the local government, had the right to withdraw or modify the authority as to either the parish or the city, or both. It was said that the exempting of persons and property within the corporation of Monroe from taxation in any form by the police jury of the parish only withdrew, to that extent, from the police jury, a power that had been delegated to it; that the police jury still had to exercise the delegated power on that subject, in conformity with the Constitution and laws, within the limits of the parish, but subject to the territorial limitation imposed by the Legislature. That decision was not overruled, nor even referred to, in the opinion rendered in Swords, Tax Collector, v. Baillio, supra; and there was indeed no occasion for overruling the previous decision, in the mere academic discussion of the question that was not presented for decision in the later case.

The statement made in Swords, Tax Collector, v. Baillio, to the effect that the Legislature is forbidden by article 225 of the Constitution to exempt the business and occupations carried on in municipal corporations from the payment of parochial licenses, except under authority and on the conditions stated in the concluding paragraph of article 229 of the Constitution, is inconsistent with all other decisions of this court to which we have been referred, or that we have been able to find, on that subject, none of which were overruled or referred to in Swords, Tax Collector, v. Baillio.

In Benefield v. Hines, 13 La. Ann. 420 (decided in 1858), in Marigny v. Carradine, 19 La. Ann. 99 (in 1867), in Maurin v. Smith, 25 La. Ann. 445 (in 1873), and in Parish of Iberia v. Chiapella, 30 La. Ann. 1143 (in 1878), it was held that the inhabitants of incorporated towns were subject to parochial licenses and property taxes, unless they were exempted by the terms of the charter of the town. In those cases the authority of the Legislature to exempt the inhabitants of a municipality from the payment of parish license taxes was recognized. The constitutional requirement as to the equality and uniformity of taxation when those decisions were rendered apparently applied only to state taxation. Article 127 of the Constitution of 1845, article 123 of the Constitution of 1852, article 124 of the Constitution of 1864, like article 118 of the Constitution of 1868 in that respect, required merely:

"Taxation shall be equal and uniform throughout the state. All property shall be taxed in proportion to its value, to be ascertained as directed by law."

The provision was changed so as to apply to local taxes, in article 203 of the Constitution of 1879, and the amendment was retained in article 225 of the Constitution of 1898 and of 1913, viz.:

"Taxation shall be equal and uniform throughout the territorial limits of the authority levying

the tax, and all property shall be taxed in proportion to its value, to be ascertained as directed by law."

Under that provision of the Constitution of 1879, it was held in Cooke, Tax Collector, et al. v. Dendinger, 38 La. Ann. 261 (in 1886), that the police jury of a parish had authority to tax persons and property in incorporated towns in the parish, unless that authority was withdrawn from the parish by the Legislature; but the constitutional authority of the Legislature to control the territorial limits of the parochial authority to levy taxes and licenses was clearly recognized. To the same effect was the decision in Felix v. Wagner, Sheriff, et al., 39 La. Ann. 391, 1 South. 926 (in 1887), and in Sanders v. Levi, 42 La. Ann. 407, 7 South. 692 (in 1890), and in Torian v. Shayot, 47 La. Ann. 601, 17 South. 203 (in 1895).

In Cade, Tax Collector, v. Mitchell, 51 La. Ann. 1503, 26 South. 606, referring to the concluding paragraph of article 229 of the Constitution of 1898, it was said that the provision was not self-operative; that it was a mere enabling article, putting it in the power of the General Assembly to withdraw from parochial license the business or occupations carried on in municipal corporations levying license taxes equal in amount to those levied by the police jury. It was observed that the Legislature had availed itself of that power in section 17 of the Act No. 136 of 1898, known as the Lawrason Act. But it was said that the lawmaker had not declared that in municipalities in which the conditions mentioned in the concluding paragraph of article 229 of the Constitution do not prevail parish licenses shall be collected, notwithstanding such municipalities are exempted from parish taxation by special laws or charters. That decision was referred to with approval in State ex rel. Lacoste, Sheriff, v. Vigneaux, 130 La. 428, 58 South. 135.

The framers of the Constitution of 1898

were, perhaps, of the opinion that the General Assembly was forbidden by the Constitution to exempt the occupations, trades, callings, or business carried on in a municipal corporation from the payment of parochial licenses. That may have been their reason for adding to article 229 of the Constitution of 1898 (corresponding with article 206 of the Constitution of 1879 as far as that article went) the paragraph giving the General Assembly authority to provide that municipalities levying license taxes equal in amount to those levied by police juries for parochial purposes shall be exempted from the payment of parochial licenses. But we are not at present aware of any provision in the Constitution that expressly forbids the Legislature to control the territorial limits of the authority of the police jury to levy parochial license taxes so as to leave that authority exclusively to the municipal authorities within any incorporated city. On the contrary, article 224 of the Constitution declares that the taxing power may be exercised by the General Assembly for state purposes, and by parishes and municipal corporations and public boards, under authority granted to them by the General Assembly, for parish, municipal, and local purposes. Hence it might well be inferred that the General Assembly had unqualified authority to limit the taxing power of a parish so as to leave that power exclusively to the municipal authorities of an incorporated city in the parish, if it were not for the inference that results from the limitation put upon the legislative authority in that respect by the adoption of the concluding sentence in article 229 of the Constitution. The question is an important one to any municipal corporation having a legislative charter exempting its citizens from the payment of parochial license taxes. At this point we are informed by certain attorneys who have appeared in the case as amici curiæ that the question

141 LA.—21

will be presented for decision very soon, in a case in which it is perhaps the turning point. A decision of the question is not necessary in this case, for reasons which will be explained hereafter. We have concluded, therefore, to refrain from rendering a decision upon that question here.

[4] Section 40 of Act No. 2 of 1916 provides for the establishment of a court of inferior jurisdiction, styled the city court of the city of Gretna, with such civil jurisdiction as is vested in justices of the peace and criminal jurisdiction of offenses committed within the city or within the parish wards in which the city of Gretna is situated, in the parish of Jefferson, which criminal jurisdiction shall extend to offenses punishable by imprisonment in the city jail or parish prison and to violations of the ordinances of the city of Gretna, of the health ordinances of the state board of health, and to all violations of ordinances of boards operative in the city of Gretna. The judge of the city court is given the power to arrest, examine, commit, and discharge persons accused of offenses not capital. The jurisdiction of the city court is declared to be not exclusive, but concurrent with that of the district court, and concurrent with that of the justice of the peace, where the jurisdiction of the two courts is equal, during the existence of the term of office of the incumbent justice of the peace in the city of Gretna, that is, until the next general state election, when the office of justice of the peace and constable shall be abolished.

Article 84 of the Constitution declares that the judicial power of the state shall be vested in a Supreme Court, Courts of Appeal, district courts, justices of the peace, and in such other courts as are thereafter provided for in the Constitution. Article 96 contains a proviso that the General Assembly shall have power to abolish justices of the peace courts in wards containing cities of more than 5,000 inhabitants, and to create in their stead courts with such civil jurisdiction as is now vested in justices of the peace and with criminal jurisdiction which shall not extend beyond the trial of offenses not punishable by imprisonment at hard labor and violations of municipal and parochial ordinances and the holding of preliminary examinations in cases not capital. Hence it is plain that the Legislature has no authority to create a city court except in the place and stead of a justice of the peace court that is thereby abolished. The creation of a city court in the city of Gretna, with jurisdiction extending throughout the parish wards in which that city is situated, which jurisdiction is to be and remain concurrent with that of the justice of the peace of that ward until the general state election to be held in 1920, is therefore violative of the express provisions of articles 84 and 96 of the Constitution.

[5] The plaintiffs make the further contention that this special and local statute (Act No. 2 of 1916) does not contain a recital that notice of the intention to apply for the passage of the act was published, as required by article 50 of the Constitution. There is no merit in that contention. The recital that due notice of the intention to apply for the passage of the act was given is contained in the title of the act. The title is an essential part of the statute; and the recital required by article 50 of the Constitution, being in the title, is contained in the act. See State of Louisiana v. Felter et al., 141 La. 58, 74 South. 629.

[6] There is no assurance that the Legislature intended that the provisions of the Act No. 2 of 1916 which appear to be constitutional and valid should exist independent of those provisions of the act which we must declare are unconstitutional and invalid. Much less certain would be a presumption that a majority of the electors of the city of Gretna who voted in the special

election held on the 19th of September, 1916, would have voted for the adoption of the provisions of the statute that are constitutional and valid, independently of those provisions which we must declare unconstitutional and invalid. In fact, it is doubtful whether the doctrine that a statute may, under certain circumstances, be upheld as constitutional in part and be declared unconstitutional and invalid in other respects, has any application to a referendum statute. See State ex rel. Carey et al. v. Sanders, Governor, 130 La. 272, 57 South. 924. Be that as it may, our conclusion is that the provisions of the Act No. 2 of 1916 that are constitutional and valid cannot be maintained separately and independently of those provisions which we hold to be unconstitutional and invalid.

The judgment appealed from is affirmed.