465 So.2d 674 (1985)
ST. JOHN THE BAPTIST PARISH ASSOCIATION OF EDUCATORS and Wilhemina Armour
v.
Honorable James H. BROWN, Secretary of State, State of Louisiana, St. John the Baptist Parish School Board et al.
No. 85-C-0099.
Supreme Court of Louisiana.
February 25, 1985.
William J. Guste, Jr., Atty. Gen., Charles L. Patin, Jr., T. Michael Landrum, David G. Sanders, Asst. Attys. Gen., L. Adrienne Dupont, Staff Atty., Lafayette, for applicants.
Louis L. Robein, Jr., New Orleans, John L. Diasselliss, III, Laplace, for respondents.
DIXON, Chief Justice.
The issue here is whether a school board has the authority to call an election in the parish to determine whether it should recognize a teacher's union and bargain with it.
This suit stems from a forty day work stoppage caused principally by a dispute over collective bargaining between St. John the Baptist Parish School Board and its teachers. The St. John Association of Educators represented the teachers in negotiations with the school board. A strike ending agreement was finally reached after many days of bargaining.
As part of the agreement, the school board agreed to call an election on January 19, 1985, referring the issue to the taxpayers.[1] The school board submitted the proper documents to the Secretary of State requesting that the referendum be placed on the January 19th ballot, but the Secretary of State refused the request, claiming that such a referendum was not authorized by law.
On December 13, 1984 the St. John Association of Educators and Wilhemina Armour filed suit against the Secretary of *675 State, the school board and its individual members. The plaintiffs sought writs of mandamus directed to all defendants ordering them to prepare a referendum on the collective bargaining issue. The suit also prayed for a writ of injunction against the school board and its members ordering it "to make the necessary preparations and to conduct such an election."
The trial court dismissed the school board from the suit but issued a writ of mandamus to the Secretary of State compelling him to include the proposition on the January 19th ballot. The Secretary of State appealed this decision to the Fifth Circuit Court of Appeal which vacated the mandamus but issued an injunction of its own ordering the Secretary of State to proceed with the election. 462 So.2d 1269. This court then granted writs on the application of the Secretary of State. 463 So.2d 1311.
Both parties to this suit have argued Section 1299 of the Louisiana Election Code, R.S. 18:1 et seq., in support of their positions. The Secretary of State claims that this case is governed by the amended version of Section 1299. The statute as amended by Act 672 of the 1984 session of the legislature declares that:
"The provisions of this Chapter provide the procedures to be used in elections, except those provided for in Chapter 6-A of this Code, at which a proposition or question, authorized by the state constitution, by a statute of this state, or by a home rule charter, shall be submitted to the voters."
Plaintiffs admit that if the amended version of 18:1299 is controlling, their case must fall. Before the amendment, 18:1299 provided:
"The provisions of this Chapter provide the procedures to be used in elections at which a proposition or question, except those provided for in Chapter 6-A of this Code, shall be submitted to the voters."
Plaintiffs interpret the former 18:1299 to permit an election "at which a proposition or question ... shall be submitted to the voters."
Defendants argue that former 18:1299 is procedural only, and granted no power to call an election, which can only be done by constitution, statute or home rule charter.
Plaintiffs argue that the old law was still in effect at the time of the election, due to the provisions of the federal Voting Rights Act, 42 U.S.C., § 1971 et seq. Under that act the enforcement of any amendments to the Louisiana election laws which effect a change in election procedure is prohibited prior to approval of the changes by the United States Department of Justice. Although Act 672 became effective on September 3, 1984, plaintiffs argue that its enforcement was suspended until approval from Washington, which in this case did not arrive until December 4. Since the school board filed its request with the Secretary of State on November 27, the issue as posed by the parties is whether the prohibition of the enforcement of the statute alters in any way the date the statute becomes law.
This statute is probably not dispositive of the case, for the election code is merely a procedural scheme enacted pursuant to the Constitution of 1974, designed to provide a codified system of election procedure. The substantive power to call an election is not found anywhere in the code.
At any rate, the amended 18:1299 is in effect today, and was in effect on January 19, 1985, the day designated for the referendum in the proposed call. Whatever the effect of the Voting Rights Act, the new 18:1299 was effective, at least, on November 27, 1984, and the old 18:1299 has been effectively repealed.
The Attorney General's argument that a school board does not possess the requisite power to call a referendum of its electorate is more persuasive.
No provision in the election code today (nor in 18:1299 before its amendment) gave the power to a school board to call a referendum election, nor does any other statute or constitution.
*676 A school board is a constitutionally created institution. La.Const.Art. 8, § 9. Its powers are defined by statute:
"Each parish school board shall determine the number of schools to be opened, the location of the school houses, the number of teachers to be employed, and select such teachers from nominations made by the parish superintendent, provided that a majority of the full membership of the board may elect teachers without the endorsement of the superintendent. The boards shall have authority to employ teachers by the month or by the year, and to fix their salaries; provided that there shall be no discrimination as to sex in the fixing thereof and provided further, that it is not the purpose of this Section to require or direct the reduction of any salary, or salary schedule, presently in force. The boards shall see that the provisions of the state school laws are complied with.
Each school board is authorized to make such rules and regulations for its own government, not inconsistent with law or with the regulations of the State Board of Elementary and Secondary Education, as it may deem proper.
The regular meetings of each board shall be held at least once each month on such day as each board shall select. Additional regular meetings may be held as each board designates. Special meetings may be held as boards determine or as occasion may require.
Each school board shall exercise proper vigilance in securing for the schools of the parish all funds destined for the support of the schools, including the state funds apportioned thereto, and all other funds.
The secretary of each board shall keep a record of all transactions and proceeding(s) of the board.
Parish school boards may receive land by purchase or donation for the purpose of erecting school houses; provide for and secure the erection of same, construct such outbuildings and enclosures as shall be conducive to the protection of property, and make repairs and provide for the necessary furniture, equipment and apparatus.
They have the power to recover for any damage that may be done to the property in their charge; they may change the location of a school house, sell or dispose of the old site, or of any site which for any reason can no longer be used or which is unused and unnecessary or unsuitable as such, and use the proceeds thereof for procuring a new one. Provided that the Orleans Parish School Board shall have authority to prescribe the rules and the regulations to govern the building and equipping and repairing of school houses, and the dates of the meetings of that board.
The provisions of this Section shall not affect the provisions of R.S. 17:461 through 17:463 relative to the Orleans Parish School Board." R.S. 17:81.
In addition to these statutory powers, a school board also possesses some implied powers necessary to implement its policies and fulfill its duties. Watkins v. Ouachita Parish School Board, 173 La. 259, 136 So. 591 (1931). One of these implied powers is the power to submit to collective bargaining with its teachers. Louisiana Teachers' Association v. Orleans Parish School Board, 303 So.2d 564 (La.App.1974).
This court has recognized the power of the state legislature to authorize parish or municipal wide referenda on issues of purely local interest, such as taxation for local purposes and alcoholic beverage control. Police Jury v. Succession of McDonogh, 8 La.Ann. 341 (1853); State ex rel. Carey v. Sanders, 130 La. 272, 57 So. 924 (1912); City of Gretna v. Bailey, 141 La. 625, 75 So. 491 (1917); State v. Gardner, 198 La. 861, 5 So.2d 132 (1941).[2] Such local option *677 laws have been traditionally upheld as lawful delegations of legislative power.
"The right of the legislature to delegate the power of taxation, for local purposes, to municipal authorities, is established in this State, and in our sister States, by an uninterrupted train of legislative precedents and judicial decisions. The necessity and propriety of such delegation are obvious. The Supreme jurisdiction has not leisure nor information to take cognizance of, and manage, all the matters which concern a particular locality. The interests of a particular town, or county, are best understood, and can be best administered by its inhabitants, or persons of their choice selected under legislative authority. Our own statute books, and those of our sister States, are filled with Acts creating these political corporations, whose powers are emanations from the legislative will, and subject to be enlarged or curtailed by that will, from time to time, as the wisdom of the legislature may dictate." Police Jury v. Succession of McDonogh, supra, at 353.
But that the legislature possesses the requisite constitutional authority to call such a local election does not mean that a parish school board is clothed with a similar grant of power.
Article 3, § 1 of the Louisiana Constitution of 1974 declares that "[t]he legislative power of the state is vested in a legislature, consisting of a Senate and a House of Representatives." Unlike the United States Constitution which confers specific grants of power to the Congress, state constitutions have been traditionally interpreted, to the contrary, as mere limitations on the otherwise absolute power of the legislature.
"A general principle of judicial interpretation of a state constitution is that, unlike the federal constitution, a state charter's provisions are not grants of power, they are rather limitations on the power of the people exercised through the state legislature. In its exercise of the entire legislative power of the state, the legislature may enact any legislation that the state constitution does not prohibit. Thus, to hold legislation invalid under the state constitution, it is necessary to rely upon some particular constitutional provision that limits the power of the legislature to enact the statute assailed." In re Gulf Oxygen Welder's Supply Profit Sharing Plan and Trust Agreement, 297 So.2d 663, 665 (La.1974).
See also Bozant v. Campbell, 9 Rob. 411 (1845); Hainkel v. Henry, 313 So.2d 577 (La.1975); State ex rel. Guste v. Legislative Budget Committee, 347 So.2d 160 (La. 1977); New Orleans Firefighters Assn. v. Civil Service Commission, 422 So.2d 402 (La.1982); Aguillard v. Treen, 440 So.2d 704 (La.1983).
A parish school board, on the other hand, does not draw such plenary power either from the Constitution which created it or from the statute which defines its duties and obligations. A school board, with narrowly and specifically defined powers, lacks both statutory and constitutional authority to refer a decision to its electorate.
The St. John the Baptist Parish School Board has the authority, with or without popular approval, to bargain collectively *678 with its teachers. Louisiana Teachers Assn. v. Orleans Parish School Board, supra. However, we can find no source of power, specific or implied, which authorizes it to call a referendum election.
The judgment of the court of appeal is reversed, and there is now judgment in favor of defendants and against plaintiffs dismissing plaintiffs' suit, at their cost.
DENNIS, J., concurs with reasons.
WATSON, J., concurs, being of the opinion that the action of this court in halting the election has rendered the matter moot.
LEMMON, J., dissents.
NOTES
[1] The referendum was to state: "Shall the St. John the Baptist Parish School Board recognize and collectively bargain with a union/organization to be chosen in a secret ballot election ratified by a majority of all certified and non-certified employees of the St. John the Baptist Parish School Board."
[2] But confer State v. Watkins, 176 La. 837, 147 So. 8 (1933), which held that a statewide referendum called by the legislature to decide the repeal of one of its own acts, in this case the Hood Act or state prohibition law, constituted an unlawful delegation of power.

Statewide referenda such as in Watkins have been upheld by the United States Supreme Court. See Ohio ex rel. Davis v. Hildebrant, 241 U.S. 565, 36 S.Ct. 708, 60 L.Ed. 1172 (1916); City of Eastlake v. Forest City Enterprises, Inc., 426 U.S. 668, 96 S.Ct. 2358, 49 L.Ed.2d 132 (1976). In those cases, however, the Ohio Constitution had expressly reserved the referendum power to the people. The operative constitutional provision declared that:
"The legislative power of the state shall be vested in a General Assembly ... but the people reserve to themselves the power to propose to the General Assembly laws and amendments to the constitution, and to adopt or reject the same at the polls on a referendum vote ..." Ohio Const., Art II, § 1.
The California Constitution is another example of preserved initiative and referendum powers: "Sec. 1. The legislative power of this State is vested in the California Legislature which consists of the Senate and Assembly, but the people reserve to themselves the powers of initiative and referendum." Calif. Const., Art. IV, § 1. The Watkins opinion, in any case, reaffirmed the validity of local option elections. See State v. Watkins, supra, 147 So.2d at 9.