Dear Mr. Conner:
You explain that the Plaquemines Parish Council has asked you to request our legal opinion on how to abolish the parish civil service system, adopted by a majority of the voters of Plaquemines Parish in 1995, if it chose to do so. You further explain that debate has centered around two methods of doing so —viz., (1) by the same method it was adopted in the first place, that is, by a vote of a majority of the voters of Plaquemines Parish and (2) only by amendment to the Louisiana Constitution. You ask an additional question: If the only way to abolish this parish civil service system is by amendment to the state constitution, would this method violate the Equal Protection or Due Process clauses of the federal or state constitutions by taking away the power of the Plaquemines Parish voters to decide for themselves whether or not they want this parish civil service system without statewide intervention? In summary, you would like to know what is the appropriate way to abolish this parish civil service system if the citizens of Plaquemines Parish desired to do so.
We, in turn, requested further information about the parish council's resolution and the proposition put to the voters of Plaquemines Parish whereby the civil service system was established in the first place. We needed to verify under what provisions this parish civil service system was established, for there appear to be more than one way to create a parish civil service system.
La. Const. (1974) art. 10, § 14 provides as follows:
 "§ 14. Acceptance of Act; Other Cities, Parishes, City and Parish Governed Jointly
 "Section 14. (A) Local Option. Each city having a population exceeding ten thousand but not exceeding four hundred thousand, each parish, and each parish governed jointly with one or more cities under a plan of government, having a population exceeding ten thousand, according to the latest official decennial federal census, may elect to be governed by this Part by a majority vote of its electors voting at an election held for that purpose. The election shall be ordered and held by the city, the parish, or the city-parish, as the case may be, upon (a) the adoption of an ordinance by the governing authority calling the election; or (b) the presentation to the governing authority of a petition calling for such an election signed by electors equal in number to five percent of the registered voters of the city, the parish, or the city-parish, as the case may be.
 "(B) Acceptance. If a majority of the electors vote to adopt this Part, its provisions shall apply permanently to the city, the parish, or the city-parish, as the case may be, and shall govern it as if this Part had originally applied to it. In such case, all officers and employees of the city, the parish, or the city-parish, as the case may be, who have acquired civil service status under a civil service system established by legislative act, city charter, or otherwise, shall retain that status and thereafter shall be subject to and be governed by this Part and the rules and regulations adopted under it.
 "(C) Rejection. If a majority of the electors vote against the adoption of this Part, the question of its adoption shall not be resubmitted to the voters of the political subdivision within one year thereafter."
At the same time, La. Const. (1974) art. 10, § 15, provides the following:
 § 15. City, Parish Civil Service System; Creation; Prohibition
 "Section 15. Nothing in this Part shall prevent the establishment by the legislature, or by the respective parish governing authority, of a parish civil service system in one or more parishes, applicable to any or all parish employees, except teaching and professional staffs and administrative officers of schools, or the establishment by the legislature or by the respective municipal governing authority of a municipal civil service system in one or more municipalities having a population of less than four hundred thousand, in any manner now or hereafter provided by law. However, paid firemen and paid municipal policemen in a municipality operating a regularly paid fire and police department and having a population exceeding thirteen thousand, and paid firemen in all parishes and in fire protection districts, are expressly excluded from such a civil service system.
 "Nothing in this Part shall permit inclusion in the local civil service of officials and employees listed in Section 2 of this Article.
 "No law enacted after the effective date of this constitution establishing a civil service system applicable to one or more parishes or to one or more municipalities having a population of less than four hundred thousand shall be effective in any parish or in any municipality until approved by ordinance adopted by the governing authority of the parish or municipality."
Ordinarily, the Louisiana Constitution is a limitation on the plenary power of the legislature to enact any laws not constitutionally forbidden. New Orleans Firefighters Associationet al. v. Civil Service Comm. of City of New Orleans,422 So.2d 402 (La. 1982); Aguillard v. Treen, 440 So.2d 704 (La. 1983); and authorities cited therein. But here in article 10, § 15, the Louisiana Constitution is explicitly disavowing a limitation on the legislature to provide for the establishment of parish civil service systems, except that the actual establishment of a particular parish civil service system must have the concurrence of the parish governing authority. Moreover, the usage, in this state constitutional provision, of the words "provided by law"
indicates that the power resides in the legislature. Aguillardv. Treen, supra. Thus, the legislature retains the power and discretion to provide a statutory method whereby a parish governing authority may establish a parish civil service system,in addition to the existing constitutional method spelled out in La. Const. (1974) art. 10, § 14, above. The legislature has exercised this power and discretion in R.S. 33:1236(34), which, in turn, authorizes parish governing authorities to adopt a parish civil service system covering any or all of its employees with the basic and essential civil service protections described in this statutory provision.[1] It would seem that a parish governing authority could implement this statutory power by means of a mere ordinance. The legislature does not appear to have placed any limitations on abolishing a parish civil service system so created pursuant to this statutory, not constitutional, authority.[2]
However, our review of the materials you sent to us by which Plaquemines Parish adopted its parish civil service system reveals that it was adopted by the constitutional method, in accordance with La. Const. (1974) art. 10, § 14, which was expressly cited in the Plaquemines Parish Council's resolution calling for the referendum election which established the parish civil service system. Moreover, this parish civil service system was established by a referendum vote of the electors of Plaquemines Parish adopting a proposition explicitly requiring the creation of a "Constitutional Civil Service System" for the parish. Furthermore, non-binding, merely advisory, straw votes cannot be put to the electors of the parish to discover their collective desires, so that the parish council can then try to follow those desires with a subsequent ordinance. R.S. 18:1299;St. John the Baptist Parish Association of Educators v. Brown,465 So.2d 674 (La. 1985). See also Attorney General Opinions Nos. 97-63, 96-352, 96-78, 89-414, 88-477, and 87-229.
Having been adopted under La. Const. (1974) art. 10, § 14, the Plaquemines Parish civil service system is governed by the provisions thereof, including the provision in Subsection "B" which reads, in pertinent part, "If a majority of the electors vote to adopt this Part, its provisions shall apply permanently to . . . the parish . . . and shall govern it as if this Part had originally applied to it." This "Part" includes provisions of the state constitution directly providing for and governing constitutionally mandated civil service, which is beyond abolition by the legislature, beyond abolition by a governing authority, and beyond abolition by parish electors voting at a parish referendum. In our opinion, the only way to abolish such a parish civil service system is by amending the state constitution to provide for its abolition.
In addition, it is our opinion that requiring such an amendment to the state constitution, which must be ratified by a majority of electors of the whole state, to allow for the abolition of this parish civil service system does not violate either the Due Process or Equal Protection clauses of the federal or state constitutions, even if the motive for the constitutional change is to accommodate only one parish. The state constitution belongs to all of the people of the state. It was the vote of all the electors of the state at ratification which made it our state constitution. City of New Orleans v. Bd. of Comm'rs of OrleansLevee District, 93-0690 (La. 7/5/94), at pp. 14-18,640 So.2d 237, 247-248; Radiofone, Inc. v. City of New Orleans et al.,
93-0962 (La. 1/14/94), at p. 6, 630 So.2d 694, 698; and the authorities cited therein. Accordingly, it can be changed only by the vote of all the electors of the state at a ratification election. La. Const. (1974) art. 13, §§ 1 and 2. And it must be remembered that it was Plaquemines Parish itself which chose to create its parish civil service system under these constitutional provisions rather than under any other statutory provisions. Once this parish civil service system was created in this manner, these constitutional provisions providing for its permanence, which pre-existed the creation of this parish civil service system and which informed Plaquemines Parish of its effects, apply to it. Trusting that this opinion has adequately answered your questions, however if you have any further questions please do not hesitate to contact our office.
Very truly yours,
 CHARLES C. FOTI, JR. Attorney General
 BY: THOMAS S. HALLIGAN Assistant Attorney General
[1] In accordance with state constitutional provisions, paid firemen and policemen of parishes are separately provided for by R.S. 33:2531, which requires mandatory civil service coverage.
[2] See, for example, R.S. 33:2456, which provides authority for the governing authority of the municipality of St. Martinville to create a civil service system and also provides the method by which such civil service system may be abolished.